IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 41912

IRWIN RYAN RAY ADAMS,        )
            )
    Petitioner-Appellant,     )      **Boise, December 2014 Term**
            )
v.                  )      **2015 Opinion No. 32**
            )
STATE OF IDAHO,        )      **Filed:  March 19, 2015**
            )
    Respondent.          )      **Stephen W. Kenyon, Clerk**
            )

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Jerome County. Hon. John K. Butler, District Judge

District court order dismissing post-conviction petition, <u>affirmed.</u>

Sara B. Thomas, Idaho State Appellate Public Defender, Boise, for appellant. Jason C. Pintler, Deputy Appellate Public Defender, argued.

Hon. Lawrence G. Wasden, Idaho Attorney General, Boise, for respondent. John C. McKinney, Deputy Attorney General, argued.

_____

BURDICK, Chief Justice

The Idaho Supreme Court granted a petition for review of a Court of Appeals decision in this case. Irwin Ryan Ray Adams appealed the Jerome County district court's decision summarily dismissing his post-conviction relief petition, which the Idaho Court of Appeals affirmed. Adams asserts that the district court erroneously: (1) weighed the State's accident reconstruction expert's trial testimony against Adams's accident reconstruction expert's affidavits; (2) reached its own conclusions as to purported flaws in Adams's accident reconstruction expert's conclusions; and (3) wrongfully determined that even if Adams's accident reconstruction expert's testimony would have been presented at trial, it would not have changed the outcome of the case. Adams also contends that the district court erred when it dismissed the claim that trial counsel was ineffective for failing to investigate and present evidence that Adams's vehicle was incapable of going the speeds the State alleged during trial. Accordingly, Adams asks this Court to vacate the district court's order summarily dismissing his

1

post-conviction relief petition and remand the case back to the district court for an evidentiary hearing. We affirm the district court's decision.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On October 24, 2009, Irwin Ryan Ray Adams ("Adams") lost control of his vehicle while traveling at a high rate of speed and crashed. Adams's best friend, who was in the passenger seat, died from injuries he sustained in the accident. The State subsequently charged Adams with felony vehicular manslaughter. The State contended that Adams drove with gross negligence by driving 108 miles per hour (mph) in a 50 mph zone trying to chase down another vehicle, which resulted in Adams crashing his vehicle and killing his friend. Adams entered a not guilty plea on June 28, 2010, and the trial began on March 9, 2011.

Two attorneys represented Adams in the underlying case. Dan Taylor ("Taylor"), who represented Adams before trial, retained Carl Cover ("Cover"), an accident reconstruction expert. Taylor gave Cover photographs of the roadway where the accident occurred, interviews of Adams's family members, and the Idaho State Police ("ISP") accident reconstruction report. Cover subsequently presented his preliminary results to Taylor, which concluded that Adams was traveling between 70 and 75 mph when the accident occurred. However, Cover advised Taylor that he needed to see copies of all accident scene photographs the ISP took before he could finalize his findings as to Adams's speed. Cover also informed Taylor that he needed to view Adams's vehicle if Taylor intended to proceed with the theory that Adams lost control of his vehicle because another vehicle struck him from behind. In response, Taylor told Cover to finish the report and agreed to provide him with the additional photographs he requested. According to Cover, that was the last contact he had with Taylor despite Cover's numerous attempts to reach him, and Cover never received the additional material he requested. Cover testified that from that point forward, he never had contact with anyone else acting on Adams's behalf.

Adams's second counsel, Stacey Gosnell ("Gosnell"), took over Adams's case after she and Taylor dissolved their legal partnership. On two separate occasions prior to trial, Gosnell represented to the court that she had been in contact with Cover. First, at a continuance hearing, Gosnell informed the district court that Cover's report was delayed because he was involved in another trial. Following yet another continuance, Gosnell advised the State and the district court

2

that after speaking to Cover on the phone, she decided she would not call Cover as a witness at trial. Gosnell never did call Cover as a witness at trial.

At trial, the State contended that on October 24, 2009, Adams was chasing his girlfriend who was in another vehicle at the time of the accident. The State argued that Adams was going approximately 108 mph when he lost control and rolled his vehicle, resulting in his passenger's death. There were no witnesses to the accident other than individuals who came to the scene shortly after the accident had already occurred. Sean Walker ("Walker") and Denise Gibbs ("Gibbs") of the ISP investigated the accident. They concluded that Adams's vehicle hit a crest in the roadway and went airborne, leaving two parallel gouge marks approximately seven feet long where it touched down, beginning 77-80 feet from where the vehicle went airborne. The ISP investigation further revealed that Adams's vehicle then slid for approximately 200 feet, where it left the roadway and traveled another 19 feet until it struck an irrigation ditch, which caused the vehicle to roll and travel approximately another 138 feet to its final resting point. In all, Adams's vehicle traveled approximately 578 feet from the time Adams lost control to the final resting point. Gibbs presented extensive testimony at trial regarding the report and the formula the ISP used to determine Adams's speed.

Adams argued at trial that someone in a white or gray Honda was chasing him at the time of the accident and that he was not traveling faster than 75 mph.[1] Adams testified that he had not seen his girlfriend that day and that he and his friend left his house to purchase a fuel pump in Twin Falls when the Honda started following him and "pushing" him from behind.[2] Adams stated that he decided to go to the Jerome Police Department and that the last time he looked at his speedometer he was doing approximately 75 mph and the other vehicle was right on his tail. Adams then testified that after that, he did not remember anything until after his car came to a rest. Adams's theory was that the vehicle chasing him struck his vehicle from the rear, which caused him to lose control and crash.

On March 11, 2011, the jury returned a guilty verdict on the felony vehicular manslaughter charge. Adams subsequently appealed his conviction. While his appeal was

---

[1] Adams also testified that it was possible he could have been traveling faster than 75 mph when he lost control.
[2] However, in his petition for post-conviction relief, Adams changed his story. There, Adams stated that his girlfriend used his car earlier that day to drive to her mother's house and that he spoke with her at that time. Adams further stated that after his girlfriend returned to his house from her mother's later that day, she and Adams's sister got into an argument. Adams asserted that his girlfriend then called her mother to pick her up and that once she left Adams's house with her mother, Adams and his friend got into Adams's vehicle intending to follow his girlfriend.

3

pending, Adams filed a post-conviction petition. In that petition, Adams asserted several grounds for relief, including that his counsel was ineffective by failing to investigate and present evidence that another vehicle was chasing Adams and that Adams could not have been traveling faster than 75 mph at the time of the accident. Adams filed several affidavits to support his petition, including affidavits from Cover, a mechanic, and Adams's father.

On December 12, 2011, the district court issued a notice of intent to dismiss, which pointed out several deficiencies in Adams's petition that prevented the district court from granting Adams's requested relief. Specifically, the district court found that Cover's affidavit was conclusory and that Adams failed to present facts to show how Gibbs's formula for calculating Adams's speed was erroneous or unreliable. Moreover, the court pointed out that Adams's family sold Adams's vehicle before the State charged Adams and that although Adams's father later recovered the motor, the rest of the vehicle was no longer available to inspect. The court reasoned that those facts created a presumption that the evidence would have been unfavorable to Adams and that Adams could not argue his counsel was ineffective for failing to present evidence of the vehicle's mechanical difficulties when Adams's own family destroyed the evidence.

Adams subsequently filed a memorandum opposing the court's notice of intent to dismiss and several affidavits in support of that memorandum, including a supplemental affidavit from Cover. The district court found that Adams's additional evidence did not cure the deficiencies in his claims and as a result, Adams failed to establish a genuine issue of material fact that would entitle Adams to his requested relief. The district court summarily dismissed Adams's post-conviction petition. Adams appealed the district court's decision, arguing that there was a genuine issue of material fact as to whether he was prejudiced by trial counsel's failure to: (1) present Cover's expert witness testimony; and (2) investigate and present evidence of Adams's motor's mechanical issues.

The Court of Appeals affirmed the district court's decision on the basis that Cover's proffered testimony was conclusory and speculative and that neither Cover's testimony nor the mechanic's testimony created a reasonable probability that the jury's verdict would have changed. Adams petitioned this Court for review.

4

## II.   STANDARD OF REVIEW

On a petition for review, this Court gives serious consideration to the Court of Appeals' views, but directly reviews the lower court's decision. *State v. Purdum*, 147 Idaho 206, 207, 207 P.3d 182, 183 (2009). A post-conviction petition under the Uniform Post-Conviction Procedure Act is a civil proceeding governed by the Idaho Rules of Civil Procedure. *Pizzuto v. State*, 146 Idaho 720, 724, 202 P.3d 642, 646 (2008). Therefore, an applicant must prove his or her allegations by a preponderance of evidence. *Hauschulz v. State*, 144 Idaho 834, 838, 172 P.3d 1109, 1113 (2007); I.C.R. 57(c). Furthermore, admissible evidence supporting the applicant's allegations must accompany the post-conviction petition, otherwise the application is subject to dismissal. *State v. Payne*, 146 Idaho 548, 561, 199 P.3d 123, 136 (2008) (citing I.C. § 19-4903).

Idaho Code section 19-4906 authorizes trial courts to summarily dismiss post-conviction petitions pursuant to a party's motion or upon the court's own initiative. Summary dismissal of a petition is the procedural equivalent of summary judgment under I.R.C.P. 56. *Payne*, 146 Idaho at 561, 199 P.3d at 136. Therefore, summary dismissal is permissible only when the applicant fails to raise a genuine issue of material fact that, if resolved in the applicant's favor, would entitle the applicant to the relief requested. *Id.* If the applicant presents a genuine issue of material fact, the trial court must conduct an evidentiary hearing. *Id.* "However, summary dismissal may be appropriate even where the State does not controvert the applicant's evidence because the court is not required to accept either the applicant's mere conclusory allegations, unsupported by admissible evidence, or the applicant's conclusions of law." *Id.*

When this Court reviews a district court's summary dismissal of a post-conviction petition without a hearing, this Court must determine whether the pleadings, depositions, admissions, and affidavits on file create a genuine issue of fact. *Id.* "[W]here the evidentiary facts are not disputed and the trial court rather than a jury will be the trier of fact, summary judgment is appropriate, despite the possibility of conflicting inferences because the court alone will be responsible for resolving the conflict between those inferences." *Id.* (quoting *State v. Yakovac*, 145 Idaho 437, 443, 180 P.3d 476, 482 (2008)). Moreover, the trial judge is not constrained to draw inferences in favor of the party opposing a summary judgment motion. Instead, "the trial judge is free to arrive at the most probable inferences to be drawn from uncontroverted evidentiary facts." *Id.*

### III. ANALYSIS

Adams argues the district court erred by summarily dismissing his petition for post-conviction relief because there was a genuine issue of material fact as to whether he was prejudiced by trial counsel's failure to: (1) present Cover's expert witness testimony at trial; and (2) investigate and present evidence of Adams's motor's mechanical condition.

**A. The district court did not err when it summarily dismissed Adams's post-conviction petition.**

A post-conviction relief claim based on ineffective assistance of counsel will only avoid summary dismissal where the defendant establishes the existence of material issues of fact as to whether: (1) counsel's performance was objectively deficient and; (2) the deficiency prejudiced the defendant's case. *Kelly v. State*, 149 Idaho 517, 522, 236 P.3d 1277, 1282 (2010); *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

Under the first prong of the *Strickland* analysis, the defendant bears the burden of proving that "counsel's performance fell below an objective standard of reasonableness." *Aragon v. State*, 114 Idaho 758, 762, 760 P.2d 1174, 1178 (1988) (emphasis omitted) (quoting *Strickland,* 466 U.S. at 688). The appellate court presumes that trial counsel was competent "and that trial tactics were based on sound legal strategy." *State v. Porter*, 130 Idaho 772, 792, 948 P.2d 127, 147 (1997). Trial counsel's tactical decisions cannot justify relief "unless the decision is shown to have resulted from inadequate preparation, ignorance of the relevant law or other shortcomings capable of objective review." *Payne*, 146 Idaho at 561, 199 P.3d at 136.

The second prong requires a defendant to "show that the deficient conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." *Ivey v. State*, 123 Idaho 77, 80, 844 P.2d 706, 709 (1992); *see also Strickland*, 466 U.S. at 687 (The second prong "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."). We have recognized that this is a "weighty burden" for a defendant to carry. *Aragon*, 114 Idaho at 764, 760 P.2d at 1180. Indeed, a defendant must show a reasonable probability that the trial's outcome would have been be different but for counsel's deficient performance. *State v. Row*, 131 Idaho 303, 312, 955 P.2d 1082, 1091 (1998). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* "Virtually every act or omission of counsel would meet that test, and not

every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." *Id.* at 693. Indeed, we have recognized that to undermine confidence in the outcome, a plaintiff must show a substantial, not just conceivable, likelihood of a different result. *Murray v. State*, 156 Idaho 159, 164, 321 P.3d 709, 714 (2014). Therefore,

> a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors.

*Strickland*, 466 U.S. at 695–96. Thus, to determine whether counsel's errors prejudiced the trial's outcome, it is essential to compare the evidence actually presented to the jury with the evidence that may have been presented had counsel acted differently. *Clark v. Arnold*, 769 F.3d 711, 728 (9th Cir. 2014). Courts must focus their inquiry on the fundamental fairness of the trial and whether the result is "unreliable because of a breakdown in the adversarial process that our system counts on to produce just results." *Strickland*, 466 U.S. at 696.

The district court in this case concluded that there was "a triable issue of fact as to whether counsel for the petitioner was deficient and there [was] a prima facie showing as to the first element of ineffective assistance of counsel." The parties do not challenge the court's decision that Adams's counsel's representation was deficient. Rather, the parties focus on the court's findings as to *Strickland*'s prejudice prong. Therefore, we confine our analysis to whether the district court erred in determining trial counsel's performance did not prejudice Adams.

1. There is no genuine issue of material fact as to whether trial counsel's failure to present Cover's expert testimony prejudiced Adams.

Adams argues that the district court erred when it determined that Adams failed to present admissible evidence sufficient to undermine the jury's verdict. Specifically, Adams argues the district court erred twice: first, by finding that Cover's proffered testimony was conclusory and speculative; and second, by finding that even if Cover's testimony had been offered at trial, it would not have changed the jury's verdict. Adams asserts that had the district

court conducted an evidentiary hearing, Cover would have explained his conclusion that Gibbs's calculations were wrong and that Adams was only traveling 75 mph at the time of the accident.

A post-conviction petition "must present or be accompanied by admissible evidence supporting its allegations, or the application will be subject to dismissal." *Payne*, 146 Idaho at 561, 199 P.3d at 136; I.C. § 19-4903. Only expert opinions that are based upon a proper factual foundation are admissible at trial. *Bromley v. Garey*, 132 Idaho 807, 811, 979 P.2d 1165, 1169 (1999). Expert opinion that is speculative, conclusory, or unsubstantiated by facts in the record is of no assistance to the jury in rendering its verdict, and is therefore inadmissible as evidence under I.R.E. 702. *Coombs v. Curnow*, 148 Idaho 129, 140, 219 P.3d 453, 464 (2009). Testimony is speculative when it "theoriz[es] about a matter as to which evidence is not sufficient for certain knowledge." *Karlson v. Harris*, 140 Idaho 561, 565, 97 P.3d 428, 432 (2004). District courts may properly exclude expert opinion that merely suggests possibilities because it would only invite conjecture. *Bromley*, 132 Idaho at 811, 979 P.2d at 1169.

In its notice of intent to dismiss, the district court found that Cover's affidavit was deficient because it did not discuss how Cover reached his conclusions regarding Adams's speed or upon what data Cover based his speed calculation. Adams submitted Cover's supplemental affidavit in an attempt to cure the deficiencies and to provide further proof of what Cover would have testified to at trial. The district court concluded that Cover's proffered testimony in his supplemental affidavit was speculative and conclusory.

Adams argues that in reaching this decision, the district court erroneously weighed Cover's affidavits against Gibbs's testimony and concluded that Gibbs was correct. Adams also asserts that the district court applied the incorrect legal standard when it concluded an evidentiary hearing was not required. Adams contends that because there was disputed evidence as to Adams's speed, the district court was required to construe the evidence and draw all reasonable inferences in Adams's favor as the non-moving party. Instead, Adams argues, the district court erroneously weighed the evidence in the State's favor and criticized the specifics of Cover's conclusions.

There is nothing in the record to indicate the district court "weighed Cover's affidavits against Gibbs's trial testimony" or that the district court "concluded that Gibbs was correct." Instead, the district court reviewed Cover's affidavits and ultimately determined that Cover's proffered testimony was speculative and conclusory and the court implied that the testimony

8

would have therefore been inadmissible at trial. Specifically, the district court noted that "Mr. Cover is of the opinion that it is unnecessary to view the accident scene to determine the location of the take-off point or to measure the launch angle; yet he opines that the ISP investigation is in error, without being able to say where the alleged error occurred." Because Cover could not point to where the alleged error occurred in Gibbs's calculations, but only opine that "an error did occur," the district court concluded Cover's opinions were conclusory and speculative, noting that such testimony would have been of no assistance to the jury and was therefore inadmissible evidence. That decision was within the district court's discretion. *Bromley*, 132 Idaho at 811, 979 P.2d at 1169 ("The admission of expert testimony is within the sound discretion of the trial court.").

The district court also applied the correct legal principles. After determining Cover's opinions were conclusory and speculative, the district court then looked at the uncontroverted facts of the case—namely, that Adams drove at such a rate of speed that when his vehicle hit a crest in the road it went airborne and traveled 80 feet before touching down, where it left seven-foot gouge marks, slid another 200 feet, left the roadway, and struck an irrigation ditch, which caused the vehicle to roll another 138 feet to its final resting point, resulting in his passenger's death. Based on these uncontroverted facts, the court determined that even if Cover's testimony had been presented at trial, it would not have changed the jury's verdict. Therefore, the district court essentially concluded that even viewing Cover's testimony in the light most favorable to Adams, it still would not entitle Adams to his requested relief. Again, the district court was entitled to make such an inference. *Loomis v. City of Hailey*, 119 Idaho 434, 437, 807 P.2d 1272, 1275 (1991) ("When an action is to be tried before the court without a jury, the judge is not constrained to draw inferences in favor of the party opposing a motion for summary judgment but rather the trial judge is free to arrive at the most probable inferences to be drawn from uncontroverted evidentiary facts."). The district court applied the correct legal principles and we find no error in the court's reasoning.

After reviewing the facts and the record, we agree with the district court that Cover's testimony was speculative and conclusory. Therefore, Cover's testimony would have been inadmissible at trial. The following excerpts from Cover's supplemental affidavit are relevant to our decision:

. . . Because airborne equations involve trigonometric functions, a small error in field data (especially at low launch angles) may produce a large error in the calculated speed results. The investigating officer's report and calculations indicate an angle of 1.8 degrees was used for the take-off angle. The officer did not note in any of the material provided to me how the take-off angle was measured nor how the vertical fall distance was measured. There was also no indication of how a take-off point was established in order to measure an airborne distance . . .

. . . .

. . . Without details concerning the exact measurements and procedures utilized by the investigating officers I cannot say where the error occurred in their airborne calculation, only that it is my opinion that an error did occur and given the roadway geometry and physical evidence available it is my expert opinion that an airborne evaluation error would be easy to make.

These averments, taken together with the rest of Cover's affidavits, indicate that Cover criticized the ISP's conclusion as to Adams's speed based on a lack of information in the investigative reports. Thus, Cover relied on reports that he received months before trial rather than on Gibbs's trial testimony, which detailed the techniques and calculations Gibbs used to determine Adams's speed. Indeed, Gibbs testified at trial that the crest of the roadway north of the gouge marks was the only area of the roadway that could have been the "take-off point," and that the take-off angle, or "launch angle," was measured at the crest of the roadway with a digital level, which recorded a launch angle of 1.8 degrees. Gibbs then testified that she measured from where the level sat at the crest of the roadway to where the touchdown marks began to determine the distance the vehicle traveled from take-off to touch-down, which was 80.33 feet. Finally, Gibbs testified that to determine the height measurement of how far the car fell, she used a level and construction line string to measure from the crest of the roadway straight out to where the touchdown marks were and then down from the string to the roadway surface. Gibbs testified that that measurement was 1.6 feet. From there, Gibbs testified that she put those three measurements—the launch angle, the distance the car traveled, and the height measurement of how far the car fell—to determine the vehicle's speed at the point of take-off, which was 108.2 miles per hour. Cover's affidavits are devoid of any mention of this trial testimony let alone any averments that specifically contest the detailed testimony regarding the "measurements and procedures" Cover states were necessary before he could determine where the alleged error in Gibbs's calculations occurred.

Therefore, Cover's averments merely theorize that an error occurred in Gibbs's airborne calculation without identifying any evidence that would support the theory. *Karlson*, 140 Idaho at 565, 97 P.3d at 432. Indeed, Cover explicitly stated in his supplemental affidavit that he was missing information as to: (1) how the take-off angle was measured; (2) how the vertical fall distance was measured; and (3) how a take-off point was established in order to measure an airborne distance. As illustrated above, Gibbs's trial testimony elaborated on all three of these calculations. What is more, Cover never visited the accident scene to take his own measurements or to apply his own procedures in determining these three calculations. That Cover based his opinion on an incomplete set of facts is further evident from his averment that he could not say definitively where an error occurred, but only that it was his "opinion" that an error did occur. Expert opinion that is speculative, conclusory, or unsubstantiated by facts in the record does not assist the jury in rendering its verdict and, therefore, is inadmissible as evidence. *Weeks v. E. Idaho Health Servs.*, 143 Idaho 834, 838, 153 P.3d 1180, 1184 (2007). We affirm the district court's determination that Cover's proffered testimony was speculative, conclusory, and unsubstantiated by facts in the record. Therefore, the testimony would have been inadmissible at trial. Consequently, Cover's proffered testimony was insufficient to create a genuine issue of material fact that trial counsel's failure to present Cover's testimony prejudiced Adams.

2. <u>There is no genuine issue of material fact as to whether trial counsel's failure to investigate and present evidence on Adams's vehicle's mechanical issues prejudiced Adams.</u>

Adams also argues that there was a genuine issue of material fact as to whether trial counsel's failure to investigate and present evidence of Adams's vehicle's mechanical issues prejudiced Adams. The district court concluded that the mechanic's testimony only went to the attainable speed of Adams's vehicle, which would not, in and of itself, undermine the jury's verdict or satisfy *Strickland's* prejudice prong. We agree.

Several unfavorable facts work against Adams on this issue. First, it is not clear how the evidence could be admitted, as the vehicle's motor was out of the Adams family's possession for almost a year before trial. Indeed, although Adams's father stored the vehicle at his home for several months after the accident, he sold it to a salvage yard in April of 2010, nearly a year before the trial began. That salvage yard subsequently removed the motor from the vehicle and crushed the body. Adams's father did not attempt to retrieve the motor from the salvage yard to have the mechanic examine it until the end of July 2011, which was four months after the trial

resulted in a guilty verdict. By that time, the vehicle's motor had been out of the Adams family's possession for over a year. Second, it is unclear from the record when Adams informed his trial counsel of the alleged mechanical issues. Adams admitted to never discussing the alleged mechanical issues with his first counsel but did attempt, at some point, to discuss the issue with his second counsel. Finally, the mechanic stated in his affidavit that it was possible that Adams's vehicle's motor "could have still produced speeds of up to one hundred eight (108) miles per hour." From these facts alone, this Court cannot conclude that trial counsel's failure to investigate and present evidence regarding the vehicle's mechanical issues prejudiced Adams. In any event, and assuming, *arguendo*, that the mechanic's testimony had been presented to the jury, we conclude that it is not reasonably probable that the jury's verdict would have changed.

Indeed, as the district court correctly pointed out, the mechanic's testimony would have only gone to the maximum speed Adams's vehicle was capable of reaching, which allegedly would have been 70 to 75 mph. Adams assumes the jury would accept this testimony as true and, on that basis alone, conclude that he did not drive with gross negligence. We disagree. Evidence of Adams's speed would have only been a building block in Adams's defense and could not, in and of itself, be proof of whether Adams was driving his vehicle with gross negligence. In other words, Adams's speed is not dispositive of whether he drove with gross negligence at the time of the accident. The jury had to look at Adams's driving at the time of the accident and consider the totality of the evidence to determine whether Adams drove with gross negligence. The jury's finding of gross negligence was not necessarily limited to Adams's speed.

At trial, the State was required to show that Adams committed an unlawful act while operating his vehicle; that he committed the unlawful act with gross negligence; and that the operation of his vehicle was a significant cause of the passenger's death. Idaho Criminal Jury Instruction 342 defines "gross negligence" as "a wanton, flagrant or reckless disregard of consequences or willful indifference of the safety or rights of others." Whether Adams was driving 25 mph or 50+ mph over the posted speed limit, it did not change the fact that Adams, beyond a reasonable doubt, committed an unlawful act: speeding. Indeed, even if the mechanic testified at trial that the vehicle's motor prevented Adams from going any faster than 70 to 75 mph and the jury believed that testimony, there was no dispute Adams operated his vehicle in a way that significantly contributed to his passenger's death. That is, the uncontroverted evidence would still show that Adams drove at least 20 mph over the speed limit and in such a manner that

12

he lost control of his vehicle, which then traveled nearly 600 feet to its final resting point, resulting in his passenger's death. Aside from those facts, there was ample testimony at trial for the jury to conclude Adams drove with gross negligence.

Specifically, the following evidence from trial was sufficient to establish Adams acted with gross negligence:

1) Adams's testimony that it was possible he could have been traveling faster than 75 mph when he lost control;

2) Several witnesses' testimony that Adams told them that he was traveling in excess of 100 mph;

3) Witness testimony that Adams said that the victim had asked Adams to stop and let him out of the vehicle at one point during the high-speed chase;

4) Expert testimony and evidence that showed Adams was needlessly chasing the vehicle his girlfriend was in at a high rate of speed on a narrow country road that had significant rises and falls; and

5) Expert testimony and evidence that showed Adams's speed, combined with the road conditions, caused the vehicle to go airborne for approximately 80 feet before it returned to the roadway, leaving two parallel gouge marks approximately seven feet long, then sliding approximately 200 feet, where it left the roadway and traveled another 19 feet until it struck an irrigation ditch, which caused the vehicle to roll and travel another 138 feet to its final resting point;

Based on these facts, the totality of circumstances indicate that Adams's conduct amounted to "a wanton, flagrant or reckless disregard of consequences or willful indifference of the safety or rights of others." The mechanic's testimony would have done little to rebut this evidence, particularly in light of the fact that (1) the mechanic stated in his affidavit that it was "within the realm of possibility that the motor I disassembled and observed could have still produced speeds of up to one hundred eight (108) miles per hour" and (2) that witness testimony at trial had destroyed Adams's credibility beyond repair.[3]

Overwhelming evidence from trial supports the jury's conclusion that Adams acted with gross negligence. Adams had to show more than a conceivable likelihood of a different result at trial had trial counsel presented evidence of the motor's mechanical condition. He failed to do so. Indeed, Adams has not shown that his trial counsel's failure to present the evidence "so

---

[3] Several witnesses, including Adams's friends and the victim's family, testified at trial that Adams made statements to them that he was traveling over 100 mph. Adams himself testified at trial that it was possible he was going faster than 75 mph when he lost control. Furthermore, one of Adams's friends also testified that Adams stated that "he should have listened [to the passenger] a couple miles back when . . . [he] was saying he wanted to get out." One witness even testified that Adams switched his story as to who was chasing who. Finally, two witnesses testified at trial that they were involved in a road-rage incident with Adams the day before the accident.

13

undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." *Ivey*, 123 Idaho at 80. As the district court noted, trial counsel's failure to present the mechanic's testimony did not "clear [Adams] of alleged guilt, excuse his actions, or reduce his punishment." (quoting *Baker v. State*, 142 Idaho 411, 422, 128 P.3d 948, 959 (Ct. App. 2005).[4]

Given the overwhelming evidence supporting the jury's verdict, we conclude that it is not reasonably probable that the mechanic's testimony would have changed the outcome of the trial. We therefore hold that the district court correctly determined there was no genuine issue of material fact that trial counsel's failure to present evidence as to the vehicle's mechanical issues prejudiced Adams.

Because we hold that Adams failed to present a genuine issue of fact that he was prejudiced by trial counsel's failure to present Cover's testimony or by trial counsel's failure to present evidence as to Adams's vehicle's mechanical issues, the district court did not err when it summarily dismissed Adams's post-conviction petition.

### IV. CONCLUSION

For the foregoing reasons, we affirm the district court's decision summarily dismissing Adams's post-conviction petition. We award costs on appeal to respondent.

Justices EISMANN, J. JONES and HORTON, **CONCUR.**

KIDWELL, Justice Pro-Tem, **dissenting.**

The right to counsel is one of the foundations of the legal system and our form of government. In this case the majority opinion and the record makes it clear that Irwin Ryan Ray Adams did not receive effective assistance of public defender counsel from the trial and up through the judicial system. No counsel followed up on the accident reconstruction expert that had initially been retained. The record clearly indicates that this competent expert was willing to

---

[4] In that case, Baker crashed his vehicle while speeding in a 35 mph zone, which resulted in his passenger's death. *Baker*, 142 Idaho at 415, 128 P.3d at 952. Baker pled guilty to vehicular manslaughter and subsequently petitioned the court for post-conviction relief. *Id.* Baker alleged his counsel was ineffective in failing to discover that the ISP accident reconstruction expert's estimate that Baker was driving 97 mph was wrong. *Id.* Baker always asserted that he was driving less than 97 mph. *Id.* at 417, 128 P.3d at 954. The district court summarily dismissed the petition and the Court of Appeals affirmed. The Court of Appeals reasoned that evidence showing Baker was traveling as little as 66 mph would not have provided the basis of a viable defense to vehicular manslaughter because there was other evidence to support his conviction on that charge. *Id.* The Court of Appeals went on to conclude that the evidence Baker presented did not "tend to clear Baker of alleged guilt, excuse his actions, or reduce punishment." *Id.* at 422, 128 P.3d at 959.

assist, but Mr. Adams's counsel did not follow through. Then the Rule 35 counsel did not pursue the matter. Then all of the appellate public defenders argued in cursory briefs and to this Court that Mr. Adams's expert would not have made any difference to the jury. Public defenders are for defendants, not to protect lower court public defenders.

Because of the fact that the expert reconstruction expert for Mr. Adams was not even pursued or presented, the jury heard only the State's expert. The experts differed in estimated speed by at least 30 mph. Whether this would have influenced the jury to find Mr. Adams guilty of the lesser crime of misdemeanor vehicular manslaughter rather than felony vehicular manslaughter (gross negligence) is unknown, but Mr. Adams should have had that testimony heard by the jury.

Because Mr. Adams did not receive effective assistance of counsel this case should be remanded for a new trial.