**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 47207**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **Filed: July 13, 2021** |
| Plaintiff-Respondent, | ) |
| | ) **Melanie Gagnepain, Clerk** |
| v. | ) |
| | ) **THIS IS AN UNPUBLISHED** |
| JACOB GLEN OBERG, | ) **OPINION AND SHALL NOT** |
| | ) **BE CITED AS AUTHORITY** |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Seventh Judicial District, State of Idaho, Fremont County. Hon. Darren B. Simpson, District Judge.

Judgment of conviction and unified sentence of life with fifteen years determinate for rape and a persistent violator enhancement, <u>affirmed</u>. <u>Case remanded</u> to ensure compliance with I.C.R. 32.

Eric D. Fredericksen, State Appellate Public Defender; Jenny C. Swinford, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent.

---

BRAILSFORD, Judge

Jacob Glen Oberg appeals from his judgment of conviction and sentence for rape, Idaho Code § 18-6101(5). We affirm the judgment of conviction and sentence. We remand the case, however, for the district court to ensure any changes the court made to the presentence investigation report (PSI) are reflected in the PSI subject to disclosure under Idaho Criminal Rule 32(h).

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

In November 2017, the State charged Oberg with violating I.C. § 18-6101(5) for raping K.O. "while she was unable to resist due to any intoxicating, narcotic, or anesthetic substance." Subsequently, the State amended the charge to include a violation of I.C. § 18-6101(7) for raping

1

K.O. when she was "incapable of resisting because she was at the time unconscious or asleep" and to allege a persistent violator enhancement. Oberg pled not guilty to these charges, and the case proceeded to trial in October 2018.

At the conclusion of the trial, the jury was unable to reach a decision, and the district court declared a mistrial. The State elected to retry the case, and a second trial occurred in March 2019. The evidence at the second trial showed that Oberg; K.O; Oberg's friend, E.G.; and E.G.'s son went camping together in June 2017. On the day in question, Oberg and K.O. smoked three bowls of marijuana throughout the day, and K.O. testified she ingested approximately six beers later that evening. After she had drunk five beers, K.O. left the campfire to use the restroom. While K.O. was gone, Oberg opened a sixth beer for her and placed it in the cup holder of her chair. When K.O. returned, she drank the beer.

K.O. testified that, shortly after drinking the sixth beer, she began feeling "really heavy," lightheaded, sleepy, and her fingers felt "tingly." Oberg then exposed his penis and asked K.O. if she wanted to look at it. K.O. testified that she was "shocked" and "really scared" and that she immediately attempted to go inside the camper but was stumbling, could not walk straight, and felt like she was going to fall. Once K.O. was inside the camper, Oberg had intercourse with her.

K.O. testified that while in the camper she continuously blacked out and "slipped in and out of consciousness several times." When she was conscious, she tried to fight off Oberg, but her resistance was futile because her "arms felt so weak." She felt as if she had "sandbags on her chest," and it was hard for her to breathe, talk, and keep her eyes open. K.O. testified that she had previously drunk beer and smoked marijuana and knew what it felt like but that she had never felt like she did that night. After the camping trip, K.O. confronted Oberg in messages she exchanged with him in a social messaging application, Snapchat ("Snapchat messages"). During the second trial, the State admitted in evidence some of these Snapchat messages, several of which were redacted pursuant to the district court's earlier rulings on Oberg's hearsay objections made during the first trial.

The State also presented the testimony of Oberg's friend, E.G, who was camping with Oberg and K.O. E.G. testified that he had a prescription for Seroquel, which he used as a sleep aid, and for Suboxone; he brought these medications with him on the camping trip and kept them in the camper; the Seroquel dosage was 100 milligrams; and by the end of the trip, one bottle was empty and the other was low, although he could not recall which prescription was empty.

2

E.G. also testified that Oberg never asked for the pills and that E.G. never saw or heard anyone take his pills. The State, however, presented the testimony of an inmate who had been incarcerated with Oberg after he allegedly raped K.O. The inmate testified Oberg revealed to him that Oberg had given K.O. Seroquel "to loosen her up" and then "took advantage of her" but that Oberg did not intend for K.O. to "get that messed up."

Additionally, the State presented the testimony of Dr. Dawson, a pharmacologist. Dr. Dawson testified generally about Seroquel's use and effects, including that it is "a very commonly used drug" prescribed to treat psychiatric disorders, drug withdrawals, and post-traumatic stress. Further, he testified that if Seroquel is taken with alcohol, its sedating effects are intensified; the resulting side effects would include numbness, inability to move, inability to speak, and unconsciousness; and using marijuana with Seroquel would further impair psychomotor and cognitive functions. Finally, Dr. Dawson opined it "would be unlikely" that someone under the influence of alcohol, marijuana, and Seroquel could "knowingly consent to sexual intercourse of any kind."

Ultimately, the jury found Oberg guilty of rape and of being a persistent violator. Thereafter, the district court held a sentencing hearing during which Oberg informed the court of two errors in the presentence investigation report ("PSI"). The district court agreed to redline those errors and then sentenced Oberg to life in prison with fifteen years determinate.

Oberg appeals both the judgment of conviction and the sentence.

## II.

## STANDARD OF REVIEW

We review the trial court's decision to admit expert witness testimony for an abuse of discretion. *State v. Ellington*, 151 Idaho 53, 64, 253 P.3d 727, 738 (2011). Likewise, we review a trial court's decision to admit or exclude evidence for an abuse of discretion. *State v. Zimmerman*, 121 Idaho 971, 973-74, 829 P.2d 861, 863-64 (1992). We also review a trial court's decision to redline a PSI for an abuse of discretion. *State v. Golden*, 167 Idaho 509, 511, 473 P.3d 377, 379 (Ct. App. 2020).

When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted consistently with any legal standards applicable to the specific choices before it; and (4) reached

its decision by an exercise of reason. *State v. Herrera*, 164 Idaho 261, 270, 429 P.3d 149, 158 (2018).

## III.

## ANALYSIS

**A.     Expert Witness Testimony**

On appeal, Oberg challenges the district court's denial of his motion in limine to preclude Dr. Dawson from testifying about the combined effects of Seroquel, alcohol, and marijuana on the ability to consent to sexual conduct. Before the second trial, the State disclosed Dr. Dawson as an expert witness, and Oberg moved in limine to exclude his testimony. The district court denied that motion but postponed the trial to allow Oberg an opportunity to locate an opposing expert. Thereafter, Oberg moved in limine again seeking to exclude Dr. Dawson's specific opinion that "it is more likely than not that [K.O.] was incapacitated by the combination of drugs and alcohol at the time of her assault."

Addressing this motion, the court ruled:

Dr. [Dawson] shall be allowed to testify about the effect of the drug Seroquel on the human body, alone and/or in combination with alcohol and marijuana. He may testify whether [K.O.'s] description of the physical manifestations she encountered on the night in question are similar to the effects of Seroquel when taken with alcohol and/or marijuana. He is not allowed to testify whether or not Seroquel was actually administered to [K.O.] on the night in question. He may not testify whether [K.O.] was actually incapacitated by the combination of drugs and alcohol in her body at the time of her alleged assault.

At the second trial, the prosecutor inquired whether in Dr. Dawson's "professional opinion, speaking generally, if someone were under the influence of Seroquel--they've never taken it before--alcohol and marijuana, would a person be able to knowingly consent to sexual intercourse of any kind?" In response, Dr. Dawson testified that "it would be unlikely." Oberg did not object to either the form of the question or to Dr. Dawson's response. As a result, Oberg's claim on appeal is necessarily limited to the district court's pretrial ruling.

On appeal, Oberg argues that the district court "did not apply the correct legal standards" when allowing Dr. Dawson to testify to this opinion and that the testimony "was based on speculation and unsubstantiated by facts in evidence." A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue. Idaho Rule of Evidence 702.

4

Whether expert testimony is admissible requires consideration of two factors: whether the witness is qualified as an expert and whether the expert's opinion will assist the trier of fact in understanding the evidence. *State v. Caliz-Bautista*, 162 Idaho 833, 835-36, 405 P.3d 618, 620-21 (Ct. App. 2017).

Regarding this latter inquiry, the Idaho Supreme Court has ruled that "expert opinion that is speculative, conclusory, or unsubstantiated by facts in the record is of no assistance to the jury in rendering its verdict." *Adams v. State*, 158 Idaho 530, 538, 348 P.3d 145, 153 (2015). Testimony is speculative if the expert theorizes about a matter but the evidence is insufficient to establish the expert's knowledge necessary to opine about that matter. *Id.* An expert witness is allowed to base an opinion on facts (1) within his personal knowledge; (2) presented to him at trial; or (3) presented to him outside of court but not perceived by him personally, if those facts are the type of facts reasonably relied on by experts in the field in drawing conclusions. *State v. Stanfield*, 158 Idaho 327, 341, 347 P.3d 175, 189 (2015).

On appeal, both parties rely on the Idaho Supreme Court's discussion about admissible expert testimony in *State v. Samuel*, 165 Idaho 746, 452 P.3d 768 (2019). In *Samuel*, the State charged Samuel with murdering his father and brother. *Id.* at 753-54, 452 P.3d at 775-76. At trial, Samuel attempted to introduce the expert testimony of a pharmacologist, Dr. Julien, to opine that Samuel was intoxicated from Celexa, a selective serotonin reuptake inhibitor (SSRI), at the time of the murders. *Id.* at 776, 452 P.3d at 798. Although Samuel never had his blood drawn, a sample of his hair was taken three weeks after the murder and analyzed. *Id.* Dr. Julien explained this sample would not show the quantity of drug usage but would show chronic use. *Id.* Further, Dr. Julien testified that Samuel's father was prescribed Celexa; Samuel was also prescribed drugs but not Celexa; and Samuel's hair sample did not contain his prescribed drugs but rather contained Celexa and Benadryl. *Id.* From these facts, Dr. Julien opined that because Samuel was not prescribed Celexa, another person "probably" took Samuel's prescribed drugs and replaced them with Celexa. *Id.*

When Samuel's counsel then inquired about the effects of an SSRI on Samuel's cognitive abilities and whether he "would have had the ability to formulate a specific intent to kill," the prosecutor objected, and the district court sustained the objection. *Id.* Outside the jury's presence, Dr. Julien admitted that he was not positive "Samuel had [Celexa] in his bloodstream

5

at the moment of the incident" and that, without a blood sample, Dr. Julien was not absolutely certain Samuel had taken another, different drug. *Id.*

The district court excluded Dr. Julien's opinion about Samuel's possible intoxication from Celexa because Dr. Julien did not have sufficient facts to conclude Samuel had Celexa in his system on the day of the murders or that intoxication caused Samuel's conduct. *Id*. at 777, 452 P.3d at 799. The Idaho Supreme Court affirmed this ruling on appeal. The Court concluded that "Dr. Julien had to speculate that Samuel had Celexa in his bloodstream on the day of the murders" and that "because there was no blood draw, there was no definitive way to know whether Samuel was intoxicated from Celexa on the night of the murders." *Id.* at 777, 778, 452 P.3d at 799, 800.

Oberg argues that "similar to *Samuel*, there was no evidence on the presence and concentration of Seroquel in K.O.'s 'blood stream that night or whether it could cause intoxication'" and that "the State's evidence was insufficient to lend any reliability to Dr. Dawson's opinions." Despite the lack of a blood draw, we conclude the State presented sufficient evidence to support Dr. Dawson's general opinion about the combined effects of ingesting Seroquel, alcohol, and marijuana on an individual's ability to consent. The State presented evidence that E.G. kept 100-milligram doses of Seroquel in the camper; Oberg had access to and may have taken E.G.'s Seroquel; Oberg later confessed to an inmate that he had given Seroquel to K.O.; and K.O. smoked three bowls of marijuana with Oberg that day and drunk six beers that night.

These facts presented at trial are the type of facts upon which Dr. Dawson was entitled to rely in formulating his general opinion. *See Stanfield*, 158 Idaho at 341, 347 P.2d at 189 (ruling expert may rely on facts presented at trial). This evidence was sufficient for Dr. Dawson to opine about the likely level of impairment of an individual who had consumed as much beer and marijuana as K.O. testified that she had consumed and had also been administered Seroquel in an amount equivalent to E.G.'s dosage. Although the jury would first have to accept these underlying facts as true before accepting Dr. Dawson's opinion, that prerequisite does not make the facts upon which Dr. Dawson relied speculative, as Oberg argues. Accordingly, the district court did not abuse its discretion by denying Oberg's motion to exclude Dr. Dawson's testimony.

**B.      Hearsay**

Oberg also challenges the district court's rulings on his hearsay objections to the Snapchat messages the State admitted in evidence, Exhibits A through F.[1]  Before the first trial, Oberg moved in limine generally to exclude the Snapchat messages between him and K.O.  The district court denied Oberg's motion.  In doing so, the court noted that the messages were "extensive"; Oberg did not identify any particular inadmissible hearsay statements; and the court would neither assume which of the statements Oberg sought to exclude nor search the record for hearsay statements.  The court stated, however, that it would consider the admissibility of any specific statements Oberg identified as hearsay at trial.

Thereafter, the State moved during the first trial to admit in evidence several Snapchat messages between K.O. and Oberg, including Exhibits A through I.  Oberg objected to Exhibits A through F on hearsay grounds.  In response, the prosecutor argued that these Snapchat messages comprised a single conversation containing admissions by a party opponent and that the entirety of these messages was necessary to provide the admissions' context, including Oberg's admission that "OK sorry i did that i know i went to [sic] far i was drunk i know that is no exvuse [sic]."  Ruling on Oberg's hearsay objection, the district court ordered the State to redact certain hearsay statements from Exhibits A through F and then admitted the remaining statements in evidence.

Before the second trial, the district court ruled that the evidentiary rulings from the first trial would remain "in effect" during the second trial.  For example, during the pretrial conference the court stated that "the ruling[s] that I made on evidence in the first trial are to remain in effect on the evidence in the second trial unless there's some new argument that I've not heard regarding their admissibility."  Also, in a subsequent written order, the court specifically addressed the Snapchat messages ruling that "the hearsay statements contained in the State's Snapchat exhibits . . . shall remain redacted for this second trial."  Then, during the second trial, the State moved to admit in evidence the redacted Exhibits A through F; the district court inquired "Any objection?"; Oberg's counsel responded "No, Your Honor"; and the court noted that the exhibits were admitted "without objection."

---

[1]      The entirety of the State's exhibits of K.O. and Oberg's Snapchat messages included Exhibits A through I.  Oberg, however, never objected to Exhibits G, H, or I on hearsay grounds, and those exhibits are not at issue on appeal.

7

On appeal, Oberg argues the district court abused its discretion by overruling his hearsay objection in part. He asserts that the court "did not apply the correct evidentiary standards by declining to further redact [the Snapchat] messages as requested by [Oberg]." Despite this assertion, Oberg does not identify any particular "evidentiary standard" the court incorrectly applied. Rather, he argues that significant portions of Exhibits A through F were "not necessary to provide context to [Oberg's] admissions." The State responds that, among other things, Oberg waived his hearsay objections to the redacted Exhibits A through F when he affirmatively stated during the second trial that he had no objection to their admission. In reply, Oberg argues that because the court had already unqualifiedly ruled during the first trial on the admissibility of the redacted Exhibits A through F, he was not required to object further and that "his 'no objection' at the second trial was not a waiver of the district court's unqualified pre-trial ruling on the hearsay issue."

We agree with the State that Oberg waived his objections to the redacted Exhibits A through F by affirmatively stating "no objection" to the admission of these exhibits during the second trial. Generally, the trial court's denial of an objection is adequate to preserve that objection. For example, "the denial of a motion in limine generally preserves an issue for appeal." *State v. Gray*, 129 Idaho 784, 793, 932 P.2d 907, 916 (Ct. App. 1997). If the trial court unqualifiedly denies a motion in limine, the party opposing the evidence's admissibility is not required to object to the evidence again at trial to preserve the issue for appeal. *State v. Hester*, 114 Idaho 688, 700, 760 P.2d 27, 39 (1988). Also, I.R.E. 103(b) provides that "once the court rules definitively on the record--either before or at trial--a party need not renew an objection or offer of proof to preserve a claim of error for appeal." Even if the denial of a pretrial motion preserves an evidentiary objection for appeal, however, the objection may be waived at trial. *Gray*, 129 Idaho at 794, 932 P.2d at 917. For example, the Idaho Supreme Court ruled in *Davidson v. Beco Corp.*, 112 Idaho 560, 564, 733 P.2d 781, 785 (Ct. App. 1986), *rev'd on other grounds*, 114 Idaho 107, 753 P.2d 1253 (1987), that "the motion will serve as a continuing objection unless counsel plainly abandons the objection by his subsequent words or conduct."

In this case, we conclude Oberg plainly abandoned his hearsay objection to the redacted Exhibits A through F during the second trial. Specifically, Oberg's counsel expressly stated "no objection" in response to the district court's inquiry whether Oberg objected to the State's motion to admit the exhibits during the second trial. Immediately thereafter, and before the court

admitted the exhibits and published them to the jury, the court--at Oberg's request--reviewed the exhibits "to clarify that the exhibits [to be admitted] are the ones we discussed." Although Oberg likely could not have remained silent in response to the court's inquiry for a response to the State's motion to admit Exhibits A through F, Oberg could have simply stated he had no objection other than his prior hearsay objection. In particular, Oberg made no argument--as he does now on appeal--that additional statements in the exhibits should be redacted, despite the court's earlier statement that the evidentiary rulings from the first trial would "remain in effect . . . unless there's some new argument." Because Oberg abandoned his hearsay objection to the redacted Exhibits A through F, we need not address the merits of his hearsay argument on appeal.

## C. Exclusion of Defendant's Exhibit 1

As an alternative to arguing the district court abused its discretion by admitting the redacted Exhibits A through F without further redaction, Oberg asserts the court abused its discretion by excluding Defendant's Exhibit 1. Exhibit 1 included additional Snapchat messages between Oberg and K.O., which apparently followed after the Snapchat messages the State admitted in Exhibits A through I. Oberg argued that the messages in Exhibit 1 suggested that at some time before Oberg raped K.O., she consensually engaged in other conduct of a sexual nature with Oberg. Oberg sought to admit Exhibit 1 during K.O.'s cross-examination after she testified that Exhibits A through I "comprise[d] the entirety of the Snapchat exchange" between she and Oberg during that particular timeframe. In response, the prosecutor objected under Idaho Rule of Evidence 412, which generally prohibits the admission of evidence regarding the victim's past sexual behavior. The prosecutor also argued that Exhibit 1 was irrelevant to the issue of consent and that Oberg failed to establish foundation relative to the "night in question."

After voir dire about Exhibit 1, counsels' arguments and a recess to consider the matter, the district court sustained the State's objection and ruled Exhibit 1 was not relevant. The court noted that the State charged Oberg with rape under subsections (5) or (7) of I.C. § 18-6101, which provide that the victim was unable to resist due to intoxication or unconsciousness. The court ruled that Exhibit 1 was not relevant because it did not tend to prove or disprove the State's allegations that K.O. was drugged and that consent is not a defense to a violation of either I.C. § 18-6101(5) or I.C. § 18-6101(7). Thereafter, when denying Oberg's motion for a new trial, the court reiterated its ruling that Exhibit 1 was not relevant. Further, the court ruled that Exhibit 1

9

lacked foundation because Oberg failed to establish the timeframe when the alleged past sexual behavior referenced in Exhibit 1 occurred and that Exhibit 1 would have been more prejudicial than probative.

On appeal, Oberg argues Exhibit 1 was admissible under Rule 412(b)(2), which provides "an alleged victim's past sexual behavior with respect to the person accused of the sex crime" is admissible "if offered by the defendant to prove consent."[2]  Specifically, Oberg argues he was entitled to defend against the rape charge by trying to prove K.O. did not resist because the conduct was consensual.  The State responds that Oberg fails on appeal to challenge the district court's alternative rulings that Exhibit 1 was inadmissible because it lacked foundation and was more prejudicial than probative.

We agree with the State.  If a trial court provides alternative grounds for its ruling, the appellant must challenge each alternative ground on appeal.  If an appellant does not challenge all of the alternative grounds for the ruling, then this Court must affirm on any uncontested basis. *State v. Ewell*, 147 Idaho 31, 34, 205 P.3d 680, 683 (Ct. App. 2009); *State v. Goodwin*, 131 Idaho 364, 366, 956 P.2d 1311, 1313 (Ct. App. 1998).  Because Oberg failed to challenge the district court's ruling that Exhibit 1 lacked foundation and was more prejudicial than probative, we affirm the district court's ruling on these alternative grounds.

**D.      Cumulative Error**

Oberg also contends that the cumulative error doctrine requires a reversal of his conviction.  Under the doctrine of cumulative error, a series of errors, harmless in and of themselves, may in the aggregate show the absence of a fair trial. *State v. Adamcik*, 152 Idaho 445, 483, 272 P.3d 417, 455 (2012).  However, a necessary predicate to the application of the

---

[2]      Oberg also argues that Exhibit 1 was relevant to challenge K.O.'s testimony that Exhibits A through I contained no missing pages.  Further, Oberg argues that under "the rule of completeness," Exhibit 1 was "necessary to provide a full picture" of K.O. and Oberg's relationship and their conduct that night" including that they "discussed and engaged in consensual sexual conduct on the night of the alleged rape."  These arguments, however, ignore that evidence of K.O.'s past sexual conduct is generally inadmissible under I.R.E. 412(a).  Oberg does not cite any authority providing that past sexual conduct is admissible for purposes of cross-examining the witness or under the "rule of completeness." *State v. Zichko*, 129 Idaho 259, 263, 923 P.2d 966, 970 (1996) (noting party waives issue on appeal if either authority or argument is lacking).  Moreover, contrary to Oberg's assertion, no evidence established the Snapchat messages in Exhibit 1 related to conduct occurring on "the night of the alleged rape" as he asserts.

doctrine is a finding of more than one error. *Id.* Because the district court's evidentiary rulings which Oberg challenges on appeal were not in error, the cumulative error doctrine is inapplicable in this case.

**E.     Corrections to PSI**

On appeal, Oberg argues the district court abused its discretion after it accepted Oberg's corrections to the PSI but failed to redline the PSI to reflect those corrections. The rules of evidence are not applicable to a PSI. *State v. Rodriguez*, 132 Idaho 261, 263, 971 P.2d 327, 329 (Ct. App. 1998). The court, in its discretion, may consider information which would otherwise be inadmissible at trial, such as hearsay, as long as the court believes the information is reliable and the defendant has an opportunity to present favorable evidence and to explain or rebut adverse information. *State v. Carey*, 152 Idaho 720, 721, 274 P.3d 21, 22 (Ct. App. 2012); *see also* I.C.R. 32(e)(1) (noting court may consider reliable, inadmissible information in PSI). The court, however, must disregard information if there is no reasonable basis to deem it reliable, such as when the information is simply conjecture. *Carey*, 152 Idaho at 721, 274 P.3d at 22.

This Court in *Golden* articulated a district court's obligations when considering a PSI:

> When considering a PSI, the district court has two distinct obligations. First, the court must reject consideration of inaccurate, unfounded, or unreliable information in the PSI. *See, e.g.*, [*Carey*, 152 Idaho at 722, 274 P.3d at 23] (noting unfounded, unreliable, or inaccurate information must be rejected); *State v. Molen*, 148 Idaho 950, 961, 231 P.3d 1047, 1058 (Ct. App. 2010) (noting court correctly declined to consider unreliable information). Second, the court must redline from the PSI information it is excluding as incorrect or unreliable. *See Molen*, 148 Idaho at 961, 231 P.3d at 1058 (ruling unreliable and incorrect information should be stricken from PSI). A court, however, is not required to strike or disregard information in the PSI simply because the defendant disputes the information. *Carey*, 152 Idaho at 722, 274 P.3d at 23 (noting no authority provides court must strike information from PSI because defendant disputes information).
>
> This Court has ruled that, when the trial court concludes information in the PSI is incorrect or unreliable, the trial court should cross out or redline that information from the PSI and send a corrected copy of the PSI to the Idaho Department of Correction. *Molen*, 148 Idaho at 961-62, 231 P.3d at 1058-59 (ruling trial court should strike unreliable information); *see also* I.C.R. 32(h)(1) (making PSI available to Department so long as defendant is committed to or supervised by Department). The rationale for redlining such information from the PSI is both to provide a clear record for appellate review and to avoid any unreliable information from prejudicing the defendant in the future: "This procedure not only ensures a clear record for review but also protects the defendant against misuse of the unreliable information in the future."

11

*Molen*, 148 Idaho at 961, 231 P.3d at 1058 (quoting *Rodriguez*, 132 Idaho at 262 n.1, 971 P.2d at 328 n.1).

*Golden*, 167 Idaho at 511-12, 473 P.3d at 379-80.

During the sentencing hearing, Oberg requested two corrections. First, he noted the PSI indicated he was previously supervised for "some fairly serious offenses such as . . . the Forcible Sexual Abuse." Oberg explained, however, that he was not prosecuted for that offense, and thus he was never supervised for it. The prosecutor indicated no objection to the requested correction, and the district court agreed to strike "forcible sexual abuse" from the statement. About this correction, the court stated that "for the record, when I make those corrections in the document, I do those on here, it comes across as red. And so I've stricken that and initialed that." Second, Oberg noted the PSI stated a child protective order for his son was issued but failed to indicate the order was later dismissed. The prosecutor commented she did not have a copy of the dismissal order but would defer to the district court's discretion to make the correction, and the court stated, "I'll just note that it was dismissed on June 28."

This record indicates the district court understood its obligation not to consider incorrect or unreliable information in the PSI and to redline that information from the PSI. As Oberg accurately notes, however, the PSI in the appellate record does not indicate the corrections. Although that PSI contains yellow and red highlighting and some underlined language, the PSI does not indicate either of the corrections the court expressly stated on the record that it was making. Because a corrected PSI is not in the appellate record in this case, we remand the case to ensure that the court's corrections are reflected in Oberg's PSI and the corrected PSI is distributed as required by I.C.R. 32(h). *See Molen*, 148 Idaho at 962, 231 P.3d at 1059 (directing court to cross out unreliable information on PSI and send corrected copy to Department of Correction).

We reject the State's argument that the absence of a corrected PSI in the appellate record constitutes harmless error. The State fails to cite any authority or make any argument that the harmless error doctrine applies to the district court's consideration of a PSI. A party waives an issue on appeal if either authority or argument is lacking. *State v. Zichko*, 129 Idaho 259, 263, 923 P.2d 966, 970 (1996).

## F. Excessive Sentence

Finally, Oberg argues his sentence is excessive. Where a sentence is not illegal, the appellant has the burden to show that it is unreasonable and thus a clear abuse of discretion.

*State v. Brown*, 121 Idaho 385, 393, 825 P.2d 482, 490 (1992). A sentence may represent such an abuse of discretion if it is shown to be unreasonable upon the facts of the case. *State v. Nice*, 103 Idaho 89, 90, 645 P.2d 323, 324 (1982). A sentence of confinement is reasonable if it appears at the time of sentencing that confinement is necessary to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation, or retribution applicable to a given case. *State v. Toohill*, 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct. App. 1982). Where an appellant contends that the sentencing court imposed an excessively harsh sentence, we conduct an independent review of the record, having regard for the nature of the offense, the character of the offender, and the protection of the public interest. *State v. Reinke*, 103 Idaho 771, 772, 653 P.2d 1183, 1184 (Ct. App. 1982). When reviewing the length of a sentence, we consider the defendant's entire sentence. *State v. Oliver*, 144 Idaho 722, 726, 170 P.3d 387, 391 (2007).

Oberg argues the district court abused its discretion by imposing an excessive sentence under any reasonable view of the facts. Specifically, he contends the court should have sentenced him to a lesser term and retained jurisdiction in light of the mitigating factors, including his difficult childhood, mental health issues, and amenability to treatment. The record shows that the court was aware of these factors but weighed this information against the aggravating factors. In articulating and formulating Oberg's sentence, the court concluded Oberg presented a high risk of future criminal conduct as stated in both the PSI and the psychosexual evaluation; he has a lengthy past criminal record of similar concerning conduct; treatment has not and would not be successful in his case; and prison is an "appropriate deterrent to not only [Oberg], but other people in the community who think about engaging in this type of conduct."

That the district court did not elevate the mitigating factors over the need to protect society and to deter similar conduct does not establish an abuse of discretion. *See State v. Felder*, 150 Idaho 269, 276-77, 245 P.3d 1021, 1028-29 (Ct. App. 2010) ("[W]hile the mitigating factors identified by [the defendant] may have some relevancy to sentencing, a court is not required to assess or balance all of the sentencing goals in an equal manner."). The court properly considered the sentencing objectives of protecting society and of achieving punishment, deterrence, and rehabilitation. *See Toohill*, 103 Idaho at 568, 650 P.2d at 710

13

(identifying sentencing objectives).   Accordingly, we cannot say the district court abused its discretion in sentencing Oberg.

### III.

### CONCLUSION

The district court did not abuse its discretion by denying Oberg's motion to exclude Dr. Dawson's testimony about the effects of Seroquel, alcohol, and marijuana; by admitting the redacted Exhibits A through F during the second trial; or by excluding Defendant's Exhibit 1. Because these evidentiary rulings were not in error, the cumulative error doctrine is inapplicable in this case.  Further, the court did not abuse its discretion in sentencing Oberg.  Accordingly, we affirm Oberg's judgment of conviction and his sentence.  We remand this case, however, for the court to ensure any changes it made to the PSI are reflected on the PSI which is subject to disclosure under I.C.R. 32(h).

Judge GRATTON and Judge LORELLO **CONCUR**.

14