# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 44440

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2017 Opinion No. 56 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: November 2, 2017 |
| | ) | |
| v. | ) | Karel A. Lehrman, Clerk |
| | ) | |
| EUGENIO CALIZ-BAUTISTA, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Jerome County. Hon. John K. Butler, District Judge.

Order granting motions in limine and judgment of conviction, <u>affirmed</u>.

Calbo & Depew, PLLC; C. Ira Dillman, for appellant. C. Ira Dillman argued.

Hon. Lawrence G. Wasden, Attorney General; Ted S. Tollefson, Deputy Attorney General, Boise, for respondent. Ted S. Tollefson argued.

_____

HUSKEY, Judge

Eugenio Caliz-Bautista appeals from his judgment of conviction after a jury found him guilty of sexual abuse of a child under the age of sixteen. On appeal, Caliz-Bautista argues the district court erred in granting the State's motions in limine that excluded the testimony of Caliz-Bautista's expert witness. Because the expert's testimony was speculative about whether the State violated its testing protocol or contaminated the evidence, we affirm the district court's order granting the State's motions in limine and judgment of conviction.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Caliz-Bautista was arrested and charged with felony lewd conduct with a minor under sixteen years of age, Idaho Code § 18-1508, and felony sexual abuse of a child under the age of sixteen years, I.C. § 18-1506. As part of the investigation, the State collected DNA evidence consisting of saliva from one of the victim's breasts and the State tested that sample to compare

1

it with a saliva sample from Caliz-Bautista.  The results of the DNA analysis indicated the saliva recovered from the victim matched the DNA sample from Caliz-Bautista.

Caliz-Bautista requested, and the district court approved, funding for a DNA expert to examine the State's testing methods.  In his witness disclosure, Caliz-Bautista explained:

> [The expert witness] will testify generally as to proper DNA testing protocol.  He will testify as to the accepted science standards to avoid contamination.  He will testify as to how contamination can occur in DNA testify [sic].  He will more specifically testify as to the procedures used to test the DNA in this case and how those procedures go against standard appropriate lab protocol to avoid contamination.  He will testify that the samples in this matter were packages [sic] and sent to the biological lab together.  He will testify that the sample obtained from Mr. Caliz was "out in the laboratory" for DNA extraction at the exact same time as the samples obtained from the complaining witness in this case were also having DNA extracted.

The witness disclosure provided only this general information and contained no additional foundation.  Defense counsel later admitted that no written report existed.

The State filed a motion in limine to exclude Caliz-Bautista's expert testimony on the grounds that the testimony was speculative.  At the motion hearing, defense counsel explained the expert's testimony, which would conclude that multiple samples were in the lab at the same time during the extraction process and the samples were loaded into a testing machine simultaneously.  The procedure, according to the expert, violated the State's own lab protocol.  The expert did not explain the degree to which the procedure violated standard protocol, nor could he quantify the effect.  Defense counsel did not explain or provide the basis from which Caliz-Bautista's expert concluded the samples were out and extracted at the same time, except that he had reviewed the State lab testing procedure manual.  In its memorandum decision granting the State's motions in limine, the district court explained:  "Counsel has provided no explanation from the expert as to how [the State lab] documentation demonstrates that the samples were open at the same time in the laboratory and the Court's review of that documentation does not show an explanation on the face of the documentation itself."  The district court acknowledged the testimony might be relevant to impeach the State's DNA expert, but the district court granted the motions in limine subject to a further offer of proof from Caliz-Bautista.[1]

_____

[1]    The district court explained:  "It is the burden of the defense, to make a sufficient showing that the expert would testify that there was likely contamination within a reasonable

2

During trial, Caliz-Bautista attempted to call the expert as a witness. Caliz-Bautista made an offer of proof, during which the expert witness testified and was questioned by both parties and the district court. The expert explained he reviewed documents from the crime lab and was familiar with the analytical methods that were typically employed by the lab, including the requirement that the lab separate all samples by time and/or place in order to avoid contamination. The expert explained that, according to the records he reviewed, the lab violated this protocol because several samples were out in the lab at the same time and the same instruments were likely used to process them.

The district court reserved ruling on the admissibility of the expert testimony. After the State and Caliz-Bautista finished presenting their respective cases-in-chief, the district court granted the State's motion to exclude the testimony of the expert witness, holding the testimony was speculative, would only invite conjecture, and therefore would not be of assistance to the jury.

The jury returned a verdict of not guilty for lewd conduct with a minor child under sixteen years of age. The jury returned a verdict of guilty for sexual abuse of a child under the age of sixteen. The district court imposed a sentence of fifteen years, with five years determinate. Caliz-Bautista timely appeals.

## II.

## STANDARD OF REVIEW

The decision whether to admit evidence at trial is generally within the province of the trial court. A trial court's determination that evidence is supported by a proper foundation is reviewed for an abuse of discretion. *State v. Gilpin*, 132 Idaho 643, 646, 977 P.2d 905, 908 (Ct. App. 1999). Therefore, a trial court's determination as to the admission of evidence at trial will only be reversed where there has been an abuse of that discretion. *State v. Zimmerman*, 121 Idaho 971, 973-74, 829 P.2d 861, 863-64 (1992).

---

degree of scientific certainty before the testimony of [the expert witness] would be relevant and admissible." Assuming without deciding that this standard is incorrect, any error does not require reversal because the district court issued its decision subject to a further offer of proof. The district court therefore allowed for additional evidence of contamination before it issued its decision on the matter.

3

When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the lower court correctly perceived the issue as one of discretion, acted within the boundaries of such discretion and consistently with any legal standards applicable to the specific choices before it, and reached its decision by an exercise of reason. *State v. Hedger*, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989).

## III.

## ANALYSIS

Caliz-Bautista argues the district court erred when it granted the State's motions in limine which excluded Caliz-Bautista's expert testimony. We disagree because the expert testimony was speculative and would not assist the jury. The district court, therefore, did not err in excluding the testimony.

**A. The District Court Correctly Ruled That the Expert Testimony on Violating State Lab Protocols Was Speculative**

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise. I.R.E. 702. To determine whether expert testimony is admissible, the district court must consider two factors. First, to give expert opinion testimony, a witness must be qualified as an expert on the matter at hand. *Id.* Whether a witness is sufficiently qualified as an expert is a matter largely within the discretion of the trial court. *Sidwell v. William Prym, Inc.*, 112 Idaho 76, 81, 730 P.2d 996, 1001 (1986). Here, neither party disputes that the expert witness is qualified.

Second, once the witness is qualified as an expert, the trial court must determine whether the expert's opinion testimony will assist the trier of fact in understanding the evidence. I.R.E. 702; *Sidwell*, 112 Idaho at 81, 730 P.2d at 1001. This condition goes primarily to relevance. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 591 (1993). One aspect of relevancy is whether the expert testimony proffered in a case is sufficiently tied to the facts of the case such that the testimony will aid the jury in resolving a factual dispute. *Id.* An expert's opinion that is speculative or unsubstantiated by facts in the record is inadmissible because it would not assist the trier of fact. *J-U-B Engineers, Inc. v. Sec. Ins. Co. of Hartford*, 146 Idaho 311, 316, 193 P.3d 858, 863 (2008). If the expert's testimony is competent and relevant, it may be admissible; the weight given to the testimony is left to the trier of fact. *State v. Hopkins*, 113

Idaho 679, 681, 747 P.2d 88, 90 (Ct. App. 1987). The admissibility of expert opinion testimony is within the district court's discretion. *Sidwell*, 112 Idaho at 81, 730 P.2d at 1001.

The critical question in this case is whether the expert opinion was speculative, which would render the opinion inadmissible. When an opinion is not based upon a proper factual foundation, that opinion is speculative. *See Bromley v. Garey*, 132 Idaho 807, 811, 979 P.2d 1165, 1169 (1999). The Supreme Court explained: "Testimony is speculative when it theorizes about a matter as to which evidence is not sufficient for certain knowledge." *Adams v. State*, 158 Idaho 530, 538, 348 P.3d 145, 153 (2014). An opinion that is speculative suggests only possibilities and may be properly excluded since the opinion would not assist the trier of fact. *See Nield v. Pocatello Health Servs., Inc.*, 156 Idaho 802, 815, 332 P.3d 714, 727 (2014); *Slack v. Kelleher*, 140 Idaho 916, 923, 104 P.3d 958, 965 (2004); *Bromley*, 132 Idaho at 811, 979 P.2d at 1169.

Although there are multiple steps in analyzing DNA samples, Caliz-Bautista's expert only took issue with the first step of the process. To understand the expert's testimony, it is helpful to understand what occurs during this first step of the testing process, as shown by the evidence presented in this case. The lab receives samples of different swabs, which are maintained in a secure location. Typically, the lab will receive two types of samples in each case: first, "known" or reference samples, which contain DNA taken from either the victim or the defendant against which a comparison is made; second, "unknown" samples, which includes evidence collected as part of the investigation. A lab technician transports all the samples from a secure location to the lab. Beginning with the unknown sample, the lab technician opens a sealed envelope, cuts off a piece of the unknown sample, and places the cutting into a test tube that has a screw cap as a seal. The sample envelope is then resealed. The lab technician repeats this process for any other unknown samples that will be tested. The sealed test tubes of the unknown samples are placed in a test tube rack and set aside. After completing the unknown samples, the lab technician repeats the process with the reference samples, except the reference samples are placed in a separate test tube rack and processed in a different machine than the unknown samples. Here, the State lab technician testified that the analysis of known and unknown samples must be separated by time and/or place. She testified that both requirements were satisfied in this case because all the unknown samples were processed first and then placed in a separate machine from the known samples.

5

Caliz-Bautista sought to introduce expert testimony to show the State violated its own lab protocols and, as a result, the evidence might have been contaminated because all the sealed evidence envelopes were out in the lab at the same time. However, the expert could not and did not testify the State violated its own lab protocols because the expert could not define what type of time and/or place separation was required by the State's lab protocol. Prior to trial, the expert failed to prepare a report or summary of his findings. At the pretrial hearing, the district court only heard defense counsel's interpretation of the expert's opinion, which included general claims about contamination and the assertion that the State violated protocol when samples were "out in the laboratory" at the same time as other samples. After hearing argument on the issue, the district court found that the expert testimony was inadmissible in Caliz-Bautista's case-in-chief because the evidence was speculative.

During Caliz-Bautista's offer of proof, the expert's testimony was presented as impeachment evidence. Caliz-Bautista's expert testified outside the presence of the jury and explained that the State's manual on DNA testing procedures require reference samples and evidence samples to be separated by time and/or place.[2] He asserted that this recommendation aligns with labs all around the country, which separate the analysis completely. The expert concluded the State "put the suspect's DNA in the same place and time with evidence DNA," although he did not explain how this happened. The expert did not argue that more than one sample was open in the lab; instead, the expert was concerned that all the sealed samples were in the lab at the same time. When asked more about the requisite degree of separation, Caliz-Bautista's expert explained that complete separation--where a lab analyzes the unknown evidence entirely before opening up the reference samples--is best practice. The district court asked:

> Now, in terms of the practices and procedures as set forth in the [Idaho State Police] Forensic Lab manuals, they reference a separation in time and space. They recommend that the evidence sample or the suspect sample be tested first. In terms of time or space, does the ISP manual specifically describe what that space should be, what that time should be?

The expert did not answer the question. Instead, the expert referred to the language of the State's manual, which states only that the question and known casework samples must be separated by time and/or space.

---

[2] The Forensic Biology Training Manual uses the term "time and/or space" whereas Caliz-Bautista's expert refers to the phrase as "time and/or place" and "time and place."

The district court did not err in excluding the testimony of Caliz-Bautista's expert in this case, either as substantive evidence in Caliz-Bautista's case-in-chief or as impeachment evidence. Caliz-Bautista's expert did not provide any testimony to refute the State's evidence that the samples were processed with the required separation of time and/or space. The expert also did not provide any evidence that the State violated its own protocols. The district court explained: "[W]hile I understand that he may have his own opinions as to how labs should conduct DNA testing, [the expert's] opinion alone does not necessarily manifest or create the standard by which labs perform their required testing services." The district court properly concluded that while other labs may test evidence differently, it does not follow that the State failed to test the evidence in accordance with the standards for which they are accredited and approved. Furthermore, we cannot assume there was a violation of protocol to have multiple sealed evidence samples in the lab at the same time. The expert witness failed to explain any violation, and thus, the district court did not err when it determined that Caliz-Bautista's expert's testimony was too speculative to be admitted and there was no other evidence the State violated its own testing standards.

**B.      The District Court Correctly Ruled That the Expert Testimony on Contamination Was Speculative**

The district court correctly excluded Caliz-Bautista's expert's testimony that there was a possibility of contamination because the samples, even in sealed envelopes, were all in the lab at the same time. This conclusion was premised on the expert's opinion that the State failed to comply with its own lab protocol. During the offer of proof, the Court asked Caliz-Bautista's expert to quantify the probability of contamination. The expert explained that he could not do so, he did not believe anyone could make such a calculation, and there was no way to tell for sure that contamination occurred in this case.

Rather than provide a conclusion that contamination occurred or it was more probable than not to have occurred, the expert explained that the State could have reduced the risk of contamination if it changed its testing procedure. The expert stated he was concerned with the risk of contamination, specifically during the first step of the analysis. As explained previously, the expert was concerned that the State increased its risk of contamination when it took all the sealed samples from the secure location into the lab, instead of taking out only the suspect's known sample and completing the test before removing the unknown evidence sample.

At trial, the DNA testing lab manager explained there was no indication that contamination occurred in this case. When Caliz-Bautista's expert took the stand for his offer of proof, he admitted there was no evidence the lab technician failed to take recommended precautions such as putting down clean paper, changing gloves, and cleaning the instruments between each sample. The expert admitted there was no evidence that the test tubes containing samples were ever open or unsealed when the unknown sample was opened. The expert explained contamination can occur when a molecule of DNA is transferred to the lip of a test tube, but the expert failed to explicate how this was possible or more likely when the test tubes that contained the evidence samples were sealed and the lab technician properly cleaned the instruments. The overall issue here was whether the DNA samples were contaminated, and yet Caliz-Bautista's expert witness testified only about a possibility of increased risk of contamination that could have been reduced. The expert admitted he could not say there was contamination or quantify the risk of contamination. Because the district court may exclude expert testimony that merely suggests possibilities and speculates on a matter to which evidence is not sufficient, the district court did not err in granting the State's motions in limine to preclude expert testimony in this case. The district court therefore did not err when it held the expert's proffered testimony regarding the possibility of contamination would not assist the jury.

## IV.

## CONCLUSION

Because the expert's testimony was speculative about whether the State violated its testing protocol or contaminated the evidence, we affirm the district court's order granting the State's motions in limine and judgment of conviction.

Chief Judge GRATTON and Judge GUTIERREZ **CONCUR**.