**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 45583**

| | |
|---|---|
| JEFFREY MARSALIS, | ) |
| | ) Filed: May 30, 2019 |
| Petitioner-Appellant, | ) |
| | ) Karel A. Lehrman, Clerk |
| v. | ) |
| | ) THIS IS AN UNPUBLISHED |
| STATE OF IDAHO, | ) OPINION AND SHALL NOT |
| | ) BE CITED AS AUTHORITY |
| Respondent. | ) |
| | ) |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Blaine County. Hon. Jonathan Brody, District Judge.

Judgment dismissing petition for post-conviction relief, affirmed in part, reversed in part, and case remanded.

Greg S. Silvey, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent.

_____

BRAILSFORD, Judge

Jeffrey Marsalis appeals the district court's summary dismissal of his petition for post-conviction relief. He asserts the district court erred in denying his claim of ineffective assistance of counsel for failing to seek exclusion of the State's expert witness, for failing to present a defense expert witness, for failing to advise him regarding his speedy trial right, and for failing to present a favorable fact witness. As discussed below, we affirm in part, reverse in part, and remand.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Marsalis was a security guard at K.G.'s place of employment in Sun Valley. K.G. went with Marsalis to a bar in Ketchum. After drinking a couple of beers, Marsalis ordered a shot of liquor for each of them and refused to tell K.G. what was in it. She testified that the drink had a

1

slightly bitter or salty taste and that there was a grainy substance left in the bottom of the glass. The two continued drinking, and sometime after K.G had a few beers, her recollection began to fade. The bartender testified that Marsalis ordered (on a bar tab) twenty beers and four shots for K.G. and himself and that K.G. also ordered and paid for beers for herself.

Following several hours of drinking, Marsalis and K.G. took a cab back to Marsalis' condominium. The cab driver testified K.G. appeared to be very intoxicated; during the ride, she curled up with her eyes closed; and Marsalis had a difficult time rousing her and getting her out of the cab once they reached Marsalis' condominium. Another individual likewise testified K.G. exhibited signs of being very intoxicated. However, a third individual, John, rode in the same cab as Marsalis and K.G. but did not notice K.G.'s intoxication. John told an investigator that he was familiar with Marsalis from previously meeting him at a local coffee shop; he had been at the same bar as Marsalis and K.G.; he rode with them in the same cab after leaving the bar; he sat in front of them in the cab and was not paying attention to them; and he did not notice any arguments or struggles between them. John did not testify at trial.

K.G. testified she had no recollection of how she left the bar or came to find herself at Marsalis' condominium, where she woke up the next morning. Upon waking, she did not know where she was and saw Marsalis in bed next to her. She was sick and vomited several times that morning, felt pain when urinating, and felt like her vagina was "bruised." She also noticed she was wearing her clothes in a different order than she remembered wearing them. After feeling sick all day, K.G. reported that night to Ketchum police officers she thought Marsalis had raped her. She then went to a hospital where a rape kit was administered. A DNA analysis showed the presence of Marsalis' semen in K.G.'s vagina.

Eventually, Marsalis was indicted and arrested for raping K.G. In the interim, Marsalis was also charged with separate, unrelated offenses in Pennsylvania. As a result, Marsalis was imprisoned in Pennsylvania. For purposes of transferring Marsalis from Pennsylvania to Idaho for a trial on the rape charge, the Idaho prosecutor filed a request for temporary custody of Marsalis in Idaho under the Interstate Agreement on Detainers (IAD), Idaho Code § 19-5001, *et. seq.* Marsalis arrived in Idaho in August 2008, and per counsels' stipulation for a continuance, the case proceeded in April 2009 to a jury trial.

At trial, the prosecution presented an expert witness, Marc LeBeau, a unit chief for the Federal Bureau of Investigation in Quantico, Virginia. The State offered Dr. LeBeau as an

expert in forensic toxicology and pharmacology of drugs used in drug-facilitated sexual assaults. Dr. LeBeau testified about several topics including, as it relates to this appeal: (1) the Widmark formula used to estimate an individual's blood alcohol concentration (BAC) based on certain variables; and (2) the Dubowski chart, which identifies categories of intoxication based on BAC ranges and the signs and symptoms associated with each category.

Using a method called retrograde extrapolation, Dr. LeBeau opined about the level of intoxication of both Marsalis and K.G. after their night of drinking. Dr. LeBeau made various assumptions based on K.G.'s physical attributes, what she ate before drinking, the number of drinks the bartender testified K.G. had, and the witness's testimony about K.G.'s intoxication symptoms. Relying on these assumptions, Dr. LeBeau opined K.G.'s BAC peaked between 1:30 a.m. and 2:30 a.m. to reach a BAC of .28. Further, Dr. LeBeau testified that a BAC of .28 categorized K.G. on the Dubowski chart as in a "stupor," meaning she was semiconscious or in and out of consciousness. Making similar assumptions about Marsalis, Dr. LeBeau opined his BAC peaked between 1:30 a.m. and 3:30 a.m. at .16, which categorized him on the Dubowski chart as in a state of "excitement."

Although Marsalis' counsel cross-examined Dr. LeBeau, Marsalis' counsel neither objected to Dr. LeBeau's qualifications as an expert nor challenged his methodology. Further, Marsalis' counsel did not present an opposing expert witness on Marsalis' behalf. The jury found Marsalis guilty of rape, and he received a unified life sentence with fifteen years determinate.

Marsalis filed a direct appeal of his conviction, and this Court affirmed. *See State v. Marsalis*, 151 Idaho 872, 264 P.3d 979 (Ct. App. 2011). Thereafter, Marsalis filed a petition for post-conviction relief and ultimately, after a long procedural delay, a second amended petition for post-conviction relief (petition). In support of this petition, Marsalis submitted (among other things) a transcript of an investigator's interview of John; an affidavit of Dr. Timothy Anstine, a chemist; and an affidavit of Dr. Kim Fromme, a clinical psychologist. After oral argument, the district court entered a written order summarily dismissing Marsalis' claims for post-conviction relief. Marsalis timely appeals.

## II.

## STANDARD OF REVIEW

Idaho Code Section 19-4906 authorizes summary dismissal of a petition for post-conviction relief, either pursuant to a motion by a party or upon the court's own initiative, if it appears from the pleadings, depositions, answers to interrogatories, and admissions and agreements of fact, together with any affidavits submitted, that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. When considering summary dismissal, the district court must construe disputed facts in the petitioner's favor, but the court is not required to accept either the petitioner's mere conclusory allegations, unsupported by admissible evidence, or the petitioner's conclusions of law. *Roman v. State*, 125 Idaho 644, 647, 873 P.2d 898, 901 (Ct. App. 1994); *Baruth v. Gardner*, 110 Idaho 156, 159, 715 P.2d 369, 372 (Ct. App. 1986).

Claims may be summarily dismissed if the petitioner's allegations are clearly disproven by the record of the criminal proceedings, if the petitioner has not presented evidence making a prima facie case as to each essential element of the claims, or if the petitioner's allegations do not justify relief as a matter of law. *Kelly v. State*, 149 Idaho 517, 521, 236 P.3d 1277, 1281 (2010); *DeRushé v. State*, 146 Idaho 599, 603, 200 P.3d 1148, 1152 (2009). Thus, summary dismissal of a claim for post-conviction relief is appropriate when the court can conclude, as a matter of law, that the petitioner is not entitled to relief even with all disputed facts construed in the petitioner's favor.

Conversely, if the petition, affidavits, and other evidence supporting the petition allege facts that, if true, would entitle the petitioner to relief, the post-conviction claim may not be summarily dismissed. *Charboneau v. State*, 140 Idaho 789, 792, 102 P.3d 1108, 1111 (2004); *Sheahan v. State*, 146 Idaho 101, 104, 190 P.3d 920, 923 (Ct. App. 2008). If a genuine issue of material fact is presented, an evidentiary hearing must be conducted to resolve the factual issues. *Goodwin v. State*, 138 Idaho 269, 272, 61 P.3d 626, 629 (Ct. App. 2002).

On appeal from an order of summary dismissal, we apply the same standards utilized by the trial courts and examine whether the petitioner's admissible evidence asserts facts which, if true, would entitle the petitioner to relief. *Ridgley v. State*, 148 Idaho 671, 675, 227 P.3d 925, 929 (2010); *Sheahan*, 146 Idaho at 104, 190 P.3d at 923. Over questions of law, we exercise free

review. *Rhoades v. State*, 148 Idaho 247, 250, 220 P.3d 1066, 1069 (2009); *Downing v. State*, 136 Idaho 367, 370, 33 P.3d 841, 844 (Ct. App. 2001).

## III.

## ANALYSIS

**A.     Failure to Challenge Dr. LeBeau's Testimony Under I.R.E. 702**

Marsalis challenges the district court's summary dismissal of his claim that his counsel was ineffective for failing to challenge the admissibility of Dr. LeBeau's testimony under Idaho Rule of Evidence 702. On appeal, Marsalis argues that, although the district court acknowledged his Rule 702 argument, the district court neither addressed his argument nor the supporting expert affidavits of Drs. Anstine and Fromme. We agree the district court failed to address these affidavits, which raise genuine issues of material fact whether Dr. LeBeau's scientific methodology would have survived a motion in limine under Rule 702. *See, e.g.*, *Lint v. State*, 145 Idaho 472, 477, 180 P.3d 511, 516 (Ct. App. 2008) (concluding whether attorney's inactivity constituted ineffective assistance turns on probability of motion's success).

Under Rule 702, a qualified expert witness may testify to scientific knowledge that will assist the trier of fact to understand the evidence or to determine a factual issue. In determining the admissibility of expert testimony, the district court must consider two factors: (1) whether the expert is qualified, and if so, (2) whether the expert's testimony will assist the trier of fact. *State v. Caliz-Bautista*, 162 Idaho 833, 835-36, 405 P.3d 618, 620-21 (Ct. App. 2017). This latter inquiry requires a preliminary assessment of whether the expert's reasoning or methodology underlying his testimony is scientifically valid and can properly be applied to the facts at issue. *State v. Perry*, 139 Idaho 520, 523, 81 P.3d 1230, 1233 (2003). "In other words, for scientific evidence to be admitted, it must be supported by appropriate validation, establishing a standard of evidentiary reliability, and must assist the trier of fact to understand the evidence or to determine a fact in issue." *State v. Trevino*, 132 Idaho 888, 893, 980 P.3d 552, 557 (1999). "An expert's opinion that is speculative or unsubstantiated by facts in the record is inadmissible because it would not assist the trier of fact." *Caliz-Bautista*, 162 Idaho at 836, 405 P.3d at 621.

While the district court ruled that "it [was] within sound trial strategy to not attack an expert who is in fact an expert," Marsalis' argument is not that Dr. LeBeau was unqualified; neither party disputes Dr. LeBeau is a qualified expert. Rather, Marsalis challenges the

5

reliability of Dr. LeBeau's method of ascertaining Marsalis' and K.G.'s BAC levels under the Widmark formula and then using those BAC levels to categorize their intoxication symptoms on the Dubowski chart. The affidavits of both Drs. Anstine and Fromme challenge the reliability of Dr. LeBeau's method, but the district court does not address either affidavit. The district court appears to reject Marsalis' Rule 702 argument when summarily concluding "the substance of Dr. LeBeau's testimony [was] not sufficiently in question." To the contrary, however, Drs. Anstine and Fromme directly challenge Dr. LeBeau's scientific methodology.

For example, Dr. Anstine challenges Dr. LeBeau's reliance on evidence other than a blood or breath analysis to determine BAC levels. Dr. Anstine opines that:

> Dr. LeBeau's statement that [K.G.] would have been in a "stupor" and [Marsalis] would have been in a state of "excitement" is pure speculation and not based on any objective scientific facts.
> . . . Scientifically, there is no way to know their levels of intoxication with any accuracy or certainty based solely on Widmark calculations. Without knowing their level of intoxication, any discussion concerning the "stages of alcoholic influence" is complete speculation.

Similarly, Dr. Fromme opines that:

> BAC estimations based on self-reports or eyewitness reports are of questionable validity.
> . . . [Further,] there is no basis for the specific signs and symptoms associated with the BAC levels in the Dubowski chart. In addition, the BAC levels in each category are so large that they are not useful for any given person. . . . Most importantly, I have not been able to find any scientific basis for the signs and symptoms attributed to the categories of BAC in the Dubowski chart.

These opinions raise genuine issues of material fact about the scientific validity of Dr. LeBeau's methodology of determining BAC levels based on testimonial evidence (verses analytical results of physical samples) and then using those estimated BAC levels to categorize the stages of Marsalis' and K.G.'s intoxication.

The State does not dispute that the affidavits of Drs. Anstine and Fromme call into question Dr. LeBeau's scientific methodology. Rather, the State appears to concede this fact by arguing "the proposed defense experts would only have impeached Dr. LeBeau's methodology, but not his conclusions." That Dr. LeBeau's methodology is questionable, however, is the basis for Marsalis' claim. Further, calling into question Dr. LeBeau's methodology necessarily calls into question the conclusions he reached using an allegedly questionable methodology.

6

We conclude the affidavits of Drs. Anstine and Fromme raise genuine issues of material fact whether Dr. LeBeau's methodology would have survived a Rule 702 motion in limine and remand for an evidentiary hearing on this claim. As an alternative argument, Marsalis contends his counsel was ineffective for failing to present an expert witness to oppose Dr. LeBeau's testimony. This argument necessarily assumes Dr. LeBeau's testimony is admissible under Rule 702, despite Marsalis' challenge to the contrary. On remand, if the district court concludes Dr. LeBeau's testimony is admissible, it should then consider whether Marsalis' counsel was ineffective for failing to present an opposing expert witness.

**B.     Failure to Advise of Speedy Trial Right**

Marsalis argues his counsel was ineffective for failing to advise him of his speedy trial right under the IAD. *See* I.C. § 19-5001, *et seq*. The IAD provides for the transfer of a prisoner from one state to another state (the receiving state) for purposes of prosecuting the prisoner in the receiving state. The IAD has a speedy trial right when a transfer is pursuant to a receiving state's written request for temporary custody. The IAD provides that:

> [T]rial shall be commenced within one hundred twenty (120) days of the arrival of the prisoner in the receiving state, but for good cause in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance.

I.C. § 19-5001(d)(3). Absent a continuance for good cause, the consequence of the receiving state's failure to commence trial within 120 days of the prisoner's arrival is the indictment's dismissal with prejudice. I.C. § 19-5001(d)(5).

In this case, Marsalis arrived in Idaho (the receiving state) in August 2008 but his trial did not occur until more than 120 days later in April 2009. The reasons for this delay were that Marsalis' counsel stipulated to a continuance and also to a change of venue. Although Marsalis signed a speedy trial waiver before the expiration of 120 days after his arrival in Idaho, he contends his counsel failed to advise him about the IAD's 120-day speedy trial right, and as a result, his waiver was not knowing and voluntary. Rejecting this claim, the district court relied on *New York v. Hill*, 528 U.S. 110 (2000), to rule: "Scheduling is not a fundamental right. As this was not a fundamental right, there was no error in defense counsel exercising that right." In other words, the district court concluded, based on *Hill*, that Marsalis' counsel validly waived his speedy trial right under the IAD by stipulating to a continuance. On appeal, Marsalis argues he had no prior notice of this ground for dismissal. We agree.

7

Where the State moves to dismiss a petition for post-conviction relief under I.C. § 19-4906(c), the district court cannot dismiss a claim on a ground the State did not assert unless the district court gives the petitioner twenty days' notice under I.C. § 19-4906(b). *DeRushé*, 146 Idaho at 602, 200 P.3d at 1152. A district court, however, does not trigger the twenty-day notice requirement if it considers other grounds the State did not raise but nonetheless reaches a conclusion based on a ground the State advanced. *Kelly*, 149 Idaho at 523, 236 P.3d at 1283; *see also McKinney v. State*, 162 Idaho 286, 292, 396 P.3d 1168, 1174 (2017) (concluding notice not required when State argued there was no evidentiary basis and district court ultimately concluded failure to allege supporting facts).

In this case, there is no dispute that: (1) the State neither cited *Hill* nor otherwise argued Marsalis' speedy trial right was a right his trial counsel could validly waive; (2) the district court sua sponte raised this issue for the first time in its order summarily dismissing Marsalis' petition; and (3) the district court did not give Marsalis twenty days' notice of its intent to dismiss his claim based on *Hill* or the nonfundamental nature of Marsalis' speedy trial right. Accordingly, we conclude the district court erred in dismissing Marsalis' claim that his counsel was ineffective for failing to advise him of his speedy trial right under the IAD without providing him twenty days' notice under I.C. § 19-4906(b) of the district court's anticipated grounds for dismissing this claim.

We are not persuaded by the State's assertion that the district court's dismissal was based on the State's arguments. In support, the State relies on the district court's alternative ruling that "even though 'good cause' [under I.C. § 19-5001(d)(3)] did not need to be shown because of the agreement [of Marsalis' counsel to a continuance], there was good cause shown on the record."[1] The State characterizes this ruling as rendering a nullity the issue of whether Marsalis' waiver was valid. Then, the State argues that "although [it] never specifically argued that counsel's decision to get a continuance and change of venue rendered whether [Marsalis'] waiver was knowing a nullity, such is implicit in both the [State's] argument and the district court's analysis."

---

[1]     The district court again cites to *New York v. Hill*, 528 U.S. 110, 112 (2000), to support this alternative ruling that, if there is a stipulation to continue, then there is no need for "good cause" for a continuance under I.C. § 19-5001(d)(3).

We disagree. The gist of the State's argument for summary dismissal is more appropriately characterized as asserting Marsalis knowingly and voluntarily waived his speedy trial right because he was aware of the reasons for the continuance and the change of venue. The State did not argue, implicitly or otherwise, that under I.C. § 19-4906(d)(3) good cause is not necessary when defense counsel stipulates to a continuance and, regardless, good cause existed in this case, as the district court alternatively ruled. Contrary to the State's position, the district court's dismissal was not ultimately based on any argument the State asserted, and the district court's alternative ruling was not one of which Marsalis had notice.

Because the district court dismissed Marsalis' claim that his counsel was ineffective for failing to advise him of his speedy trial right under the IAD on a ground the State did not assert and without giving Marsalis twenty days' notice under I.C. § 19-4906(b), we remand to allow Marsalis an opportunity to address the district court's ruling on this claim.[2]

## C. Failure to Present a Fact Witness

Marsalis challenges the district court's dismissal of his claim that his counsel was ineffective for failing to call John who, Marsalis argues, is a "favorable" fact witness. In support of his claim, Marsalis attached to his petition a transcript of John's recorded interview with an investigator. Rejecting Marsalis' claim, the district court ruled that "a witness who wasn't paying attention and had been drinking that night is not a reliable witness at trial and it is objectively reasonable to avoid calling this person as a witness." On appeal, Marsalis asserts the district court improperly made a "credibility determination in a summary proceeding." The State responds that Marsalis fails to cite any authority "for the proposition that a court may not consider the potential credibility of a witness in evaluating the effectiveness of defense counsel."

We need not resolve whether the district court improperly evaluated John's credibility in a summary proceeding, however. Rather, we affirm the district court's conclusion on an alternative basis. *See Abbott v. State*, 129 Idaho 381, 385, 924 P.3d 1225, 1229 (Ct. App. 1996) (ruling court may affirm order on correct alternative legal theory). To create a genuine factual

---

[2]     The Idaho Supreme Court has previously held that a decision based on a correct ruling of law may be affirmed despite the district court's failure to provide twenty days' notice. *See McKinney v. State*, 162 Idaho 286, 293, 396 P.3d 1168, 1175 (2017) (affirming correct ruling of law to avoid "needless waste" of remand). On appeal, however, the State does not cite to this rule, and neither Marsalis nor the State address whether *Hill* is applicable or distinguishable. For this reason, we decline to address the issue.

issue, Marsalis was required to provide admissible evidence of the substance of John's testimony. *See Thomas v. State*, 145 Idaho 765, 770, 185 P.3d 921, 926 (Ct. App. 2008). "It is not enough to allege that a witness would have testified to certain events, or would have rebutted certain statements made at trial, without providing through affidavit, nonhearsay evidence of the substance of the witness['s] testimony." *Id.* Contrary to this rule, Marsalis failed to present admissible evidence of John's proffered testimony. Neither Marsalis' allegations nor the interview transcript, which is inadmissible hearsay, is adequate to meet this standard. *See id.* For that reason, Marsalis' claim that his counsel was ineffective for failing to present John as a witness fails.

## IV.

## CONCLUSION

We affirm the district court's dismissal of Marsalis' claim that his counsel was ineffective for failing to call John as a "favorable" fact witness. We reverse, however, the district court's dismissal of Marsalis' claim that his counsel was ineffective for failing to advise him of his speedy trial right under the IAD because the district court did not give Marsalis the requisite twenty days' notice under I.C. § 19-4906(b). Likewise, we reverse the district court's dismissal of Marsalis' claim that his counsel was ineffective for failing to challenge Dr. LeBeau's testimony under Rule 702. We remand for an evidentiary hearing on this latter claim and also, if necessary, on Marsalis' claims that his counsel was ineffective for not presenting an expert witness to oppose Dr. LeBeau's testimony and for not advising him of his speedy trial right.

Chief Judge GRATTON and Judge Pro Tem MELANSON **CONCUR**.