**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 51001**

| | |
|---|---|
| TOD LEE WEBER,<br><br>    Petitioner-Appellant,<br><br>v.<br><br>STATE OF IDAHO,<br><br>    Respondent. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Filed:  April 29, 2025

Melanie Gagnepain, Clerk

THIS IS AN UNPUBLISHED
OPINION AND SHALL NOT
BE CITED AS AUTHORITY

---

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Twin Falls County.  Hon. Roger B. Harris, District Judge.

Judgment summarily dismissing petition for post-conviction relief, <u>affirmed</u>.

Erik R. Lehtinen, State Appellate Public Defender; Jenny C. Swinford, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Raúl R. Labrador, Attorney General; Mark W. Olson, Deputy Attorney General, Boise, for respondent.

---

HUSKEY, Judge

Tod Lee Weber appeals from the district court's judgment and order summarily dismissing his petition for post-conviction relief.  Weber argues the district court erred in granting summary dismissal on five specific ineffective assistance of counsel claims, all of which related to trial counsel's alleged failure to adequately impeach the victim at trial.  For the reasons set forth below, we affirm the district court's judgment and order summarily dismissing Weber's petition for post-conviction relief.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Sometime during the fall and/or winter of 2016 and early 2017, T.C., a minor, and Weber engaged in sexual intercourse after T.C. responded to a Craigslist advertisement Weber posted online; the advertisement was entitled "Fun."  T.C. testified before the grand jury that he responded

1

to the "Fun" advertisement and met with Weber sometime between December 1, 2016, and January 28, 2017. Weber was indicted for raping T.C. sometime during the above time frame.

Weber denied the allegations and the matter went to trial. At the conclusion of the trial, the jury found Weber guilty of rape as alleged in the indictment. Weber was sentenced and he appealed his judgment of conviction, which was affirmed by this Court. *State v. Weber*, Docket No. 46726 (Ct. App. May 25, 2021) (unpublished).

Weber then filed a petition for post-conviction relief, alleging multiple claims of error. Relevant to this appeal are five allegations of ineffective assistance of counsel. Weber alleged counsel was deficient for failing to adequately impeach T.C. at trial on: (1) T.C.'s prior inconsistent statements to law enforcement; (2) T.C.'s prior inconsistent statements during a CARES interview; and (3) T.C.'s prior inconsistent statements at the grand jury proceedings. Weber also alleged trial counsel was deficient for: (1) failing to introduce T.C.'s prior inconsistent statements at the grand jury proceedings as substantive evidence; and (2) failing to present evidence to contradict T.C.'s testimony. Weber alleged that trial counsel's deficient performance prejudiced Weber at trial.

Weber and the State filed motions for summary disposition. Following a hearing, the district court granted the State's motion, denied Weber's motion, and entered a judgment summarily dismissing Weber's petition for post-conviction relief. Weber appeals.

## II.

## STANDARD OF REVIEW

On appeal from an order of summary dismissal, we apply the same standards utilized by the trial courts and examine whether the petitioner's admissible evidence asserts facts which, if true, would entitle the petitioner to relief. *Ridgley v. State*, 148 Idaho 671, 675, 227 P.3d 925, 929 (2010); *Sheahan v. State*, 146 Idaho 101, 104, 190 P.3d 920, 923 (Ct. App. 2008). Over questions of law, we exercise free review. *Rhoades v. State*, 148 Idaho 247, 250, 220 P.3d 1066, 1069 (2009); *Downing v. State*, 136 Idaho 367, 370, 33 P.3d 841, 844 (Ct. App. 2001).

## III.

## ANALYSIS

Weber argues that, as to each of the identified ineffective assistance of counsel claims, the district court erred in summarily dismissing his petition because he made a prima facie showing that there were genuine issues of material fact as to both deficient performance of trial counsel and

the prejudice Weber suffered as a result of that deficient performance. The State argues the district court did not err because there were no genuine issues of material fact on any of the contested claims and Weber did not establish either deficient performance or prejudice.

A petition for post-conviction relief initiates a proceeding that is civil in nature. Idaho Code § 19-4907; *Rhoades*, 148 Idaho at 249, 220 P.3d at 1068; *State v. Bearshield*, 104 Idaho 676, 678, 662 P.2d 548, 550 (1983); *Murray v. State*, 121 Idaho 918, 921, 828 P.2d 1323, 1326 (Ct. App. 1992).

Idaho Code § 19-4906 authorizes summary dismissal of a petition for post-conviction relief, either pursuant to a motion by a party or upon the court's own initiative, if it appears from the pleadings, depositions, answers to interrogatories, and admissions and agreements of fact, together with any affidavits submitted, that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. When considering summary dismissal, the district court must construe disputed facts in the petitioner's favor, but the court is not required to accept either the petitioner's mere conclusory allegations, unsupported by admissible evidence, or the petitioner's conclusions of law. *Roman v. State*, 125 Idaho 644, 647, 873 P.2d 898, 901 (Ct. App. 1994); *Baruth v. Gardner*, 110 Idaho 156, 159, 715 P.2d 369, 372 (Ct. App. 1986). Moreover, the district court, as the trier of fact, is not constrained to draw inferences in favor of the party opposing the motion for summary disposition; rather, the district court is free to arrive at the most probable inferences to be drawn from uncontroverted evidence. *Hayes v. State*, 146 Idaho 353, 355, 195 P.3d 712, 714 (Ct. App. 2008). Such inferences will not be disturbed on appeal if the uncontroverted evidence is sufficient to justify them. *Id.*

Claims may be summarily dismissed if the petitioner's allegations are clearly disproven by the record of the criminal proceedings, if the petitioner has not presented evidence making a prima facie case as to each essential element of the claims, or if the petitioner's allegations do not justify relief as a matter of law. *Kelly v. State*, 149 Idaho 517, 521, 236 P.3d 1277, 1281 (2010); *DeRushé v. State*, 146 Idaho 599, 603, 200 P.3d 1148, 1152 (2009). Thus, summary dismissal of a claim for post-conviction relief is appropriate when the court can conclude, as a matter of law, that the petitioner is not entitled to relief even with all disputed facts construed in the petitioner's favor. For this reason, summary dismissal of a post-conviction petition may be appropriate even when the State does not controvert the petitioner's evidence. *See Roman*, 125 Idaho at 647, 873 P.2d at 901.

Conversely, if the petition, affidavits, and other evidence supporting the petition allege facts that, if true, would entitle the petitioner to relief, the post-conviction claim may not be summarily dismissed. *Charboneau v. State*, 140 Idaho 789, 792, 102 P.3d 1108, 1111 (2004); *Sheahan*, 146 Idaho at 104, 190 P.3d at 923. If a genuine issue of material fact is presented, an evidentiary hearing must be conducted to resolve the factual issues. *Goodwin v. State*, 138 Idaho 269, 272, 61 P.3d 626, 629 (Ct. App. 2002).

A claim of ineffective assistance of counsel may properly be brought under the Uniform Post-Conviction Procedure Act. *Barcella v. State*, 148 Idaho 469, 477, 224 P.3d 536, 544 (Ct. App. 2009). To prevail on an ineffective assistance of counsel claim, the petitioner must show that the attorney's performance was deficient and that the petitioner was prejudiced by the deficiency. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *Self v. State*, 145 Idaho 578, 580, 181 P.3d 504, 506 (Ct. App. 2007). To establish a deficiency, the petitioner has the burden of showing that the attorney's representation fell below an objective standard of reasonableness. *Aragon v. State*, 114 Idaho 758, 760, 760 P.2d 1174, 1176 (1988); *Knutsen v. State*, 144 Idaho 433, 442, 163 P.3d 222, 231 (Ct. App. 2007). To establish prejudice, the petitioner must show a reasonable probability that, but for the attorney's deficient performance, the outcome of the trial would have been different. *Aragon*, 114 Idaho at 761, 760 P.2d at 1177; *Knutsen*, 144 Idaho at 442, 163 P.3d at 231. This Court has long adhered to the proposition that tactical or strategic decisions of trial counsel will not be second-guessed on appeal unless those decisions are based on inadequate preparation, ignorance of relevant law, or other shortcomings capable of objective evaluation. *Gonzales v. State*, 151 Idaho 168, 172, 254 P.3d 69, 73 (Ct. App. 2011).

As to each of Weber's five claims, the district court found that Weber failed to establish both deficient performance and prejudice. We agree.

Preliminarily, there is no requirement for this Court to address both deficient performance and prejudice if Weber makes an insufficient argument as to either. As noted in *Strickland*, "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Strickland*, 466 U.S. at 697. The prejudice prong requires Weber to show that the alleged deficient conduct

> so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. We have recognized that this is a weighty burden for a defendant to carry. Indeed, a defendant must show a reasonable probability that the trial's outcome would have been different but for

counsel's deficient performance. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Adams v. State*, 158 Idaho 530, 536-37, 348 P.3d 145, 151-52 (2015) (quotations and citations omitted). In this case, Weber fails to demonstrate a genuine issue of material fact regarding prejudice as to any of his claims and, thus, the district court did not err in granting the State's motion for summary dismissal.

At trial, T.C. testified that he responded to an advertisement in the "Casual Encounters" section of Craigslist entitled, "Fun." Evidence was presented that this particular advertisement was posted in August 2016. T.C. testified that after emailing the person who posted the advertisement, the two exchanged text messages and ultimately agreed to meet. T.C. testified that he met Weber (although T.C. did not know Weber's name at the time) at the designated location, that Weber picked him up in a red car and drove him to Weber's home, and the two went upstairs to Weber's room. T.C. testified about drinking beer and the subsequent sexual contact between himself and Weber. T.C. testified that Weber then dropped him off at a location close to T.C.'s home.

Weber also testified at trial. He testified that he solicited sexual contact through advertisements he placed on Craigslist, that T.C. responded to one of the advertisements, the two exchanged emails and text messages, and they agreed to meet. Weber testified that he believed it was around Labor Day weekend 2016. Weber testified that he drove to a particular location to pick up T.C and they went to Weber's home, that they went upstairs to Weber's room where they visited for a period of time, and that Weber later drove T.C. to a location close to T.C.'s home and dropped him off. Weber further testified that, approximately six months later, he received a text message from T.C. regarding the encounter. The text exchange is as follows:

> T.C.: Hey, it's [T.C.] we hook up a while back what's up?
> Weber: Hi, I am in Utah working this week. I will not be back until Friday night.
> T.C.: I'm thinking of telling my parents or someone what happened, it has been bothering me
> Weber: What happen? What do you mean?
> T.C.: you know what I mean. when we hooked up and u picked me up from the mcchevron. And we went back to your place
> Weber: OK but what about it? You put the add on craiglist right? What is bothering you? The add you put on CL or hooking up with me? I am not sure whst you are saying?
> T.C.: uhh you don't remember you put the add up? And hooking up with you I just feel violated and I need to talk to someone, I'm only 16 and I told

you that and I said no before u put your dick in me, idk how I feel. It was my first time and it's bothering me

Weber: What? You told me you are 18? You responded to my add? Maybe I do not remember. I honestly did not know I was in you. I have no std. I meant no wrong. If I new you were 16 I would have never invited you to my house or talk to you. I asked you a few times about your age.

T.C.: I don't know I'll talk to you later. Tomorrow maybe idk how I feel

Weber: You have to be 18 to respond or put an add on craigs list. I may have some of the convo we had still. I will have to check

T.C.: I'm going to tell my parents.

Weber's defense in his criminal case was that he did not have sexual contact with T.C. His defense centered around highlighting the numerous discrepancies in T.C.'s statements to law enforcement, his testimony during the grand jury proceeding, and his testimony at trial. Weber's trial counsel cross-examined T.C. about these discrepancies at trial, including when the events occurred, T.C.'s description of Weber, whether Weber provided beer to T.C., and specific facts about the sexual contact between the two.

On appeal, Weber argues that failure to further impeach T.C. on certain topics prejudiced him because doing so would have advanced Weber's trial strategy that T.C. was lying about the sexual nature of the encounter. Weber also argues that if the jury heard the additional impeachment evidence, the result of the trial would have been different. We disagree.

Weber argues that T.C. told law enforcement he had text messages sent to him from Weber that stated, "I had a great time. Did you?" and "we should hang out again." However, when law enforcement conducted a forensic analysis on Weber's phone, they found no such messages. Weber argues that if "trial counsel had presented evidence that law enforcement did not find the text messages on Mr. Weber's phone, the jury would have doubted whether T.C. was credible on those messages." Whether T.C. was credible on the content of those particular text messages was unlikely to result in a different trial outcome because Weber testified that he exchanged text messages with T.C. and the content of one of those text messages was discussed during Weber's testimony. The fact that one of several text messages was not found on Weber's cell phone does not negate the testimony that Weber and T.C. exchanged text messages. Moreover, in light of Weber's subsequent text message where Weber did not deny anally penetrating T.C. but only stated he did not remember doing so and meant no harm, the lack of the specific text messages Weber highlights were not reasonably likely to change the outcome of the trial.

Weber also challenged trial counsel's failure to impeach T.C. with the CARES report to address T.C.'s various descriptions of Weber. However, Weber's defense was not that he had never met T.C. but only that the two never had sexual intercourse. Weber even posited for the jury that T.C.'s proffered reason for participating in the sexual acts was provided only after T.C. saw Weber at trial. More importantly, trial counsel did cross-examine T.C. on his varying descriptions of Weber in the CARES report and T.C. acknowledged that he "could have" given an inconsistent description of Weber in the CARES interview. Thus, T.C. was impeached with his statements in the CARES interview. T.C.'s varying physical descriptions of Weber were ultimately irrelevant because Weber testified that he was the one who picked up T.C. and drove them to Weber's home. Any alleged failure by trial counsel to provide additional impeachment on T.C.'s differing descriptions of Weber does not create any reasonable probability of a different outcome at trial.

Next, Weber argues that, had T.C. been further impeached with his testimony from the grand jury proceedings regarding the date the sexual contact occurred and the sequence of events during the meeting between T.C. and Weber, there was a reasonable probability that the outcome of the trial would have been different. Weber argues that because there was no physical evidence of the event, the case hinged on the jury's credibility assessment of T.C. and Weber. Although Weber acknowledges that trial counsel did cross-examine and impeach T.C. regarding the inconsistencies, he asserts such cross-examination and impeachment were insufficient. Weber further explains, "the impeachment of T.C. on his timeline inconsistencies was *not* to claim that the encounter never occurred, but to claim that T.C. was not credible about what happened during the encounter." However, Weber fails to explain why the cross-examination was insufficient. As found by the district court, "it was abundantly clear that T.C. was confused and inconsistent about many things." At trial, the State acknowledged that T.C.'s version of events had inconsistencies. However, both T.C. and Weber testified that they met on Craigslist, exchanged emails and text messages, agreed to meet at a particular location, met, and then drove to Weber's home, and went up to Weber's room. While their testimony diverges on what occurred at Weber's home, additional evidence was presented that corroborated T.C.'s version of events. For example, the subsequent text messages between T.C. and Weber supported T.C.'s testimony. Additionally, Weber's cellmate testified at trial about Weber's confession to him that Weber was in jail because "he had sex with a kid." Thus, the district court correctly concluded that further impeachment of T.C. was not reasonably likely to change the outcome of the trial.

7

For the reasons discussed above, Weber's claim regarding trial counsel's failure to introduce the transcripts of the grand jury testimony as substantive evidence similarly fails to establish prejudice. In essence, regardless of the discrepancies in T.C.'s statements regarding the timing of the sexual contact and the sequence of events during that contact, there was other evidence that corroborated T.C.'s testimony and the district court correctly concluded Weber failed to establish a reasonable probability that the outcome of the trial would have been different.

Finally, Weber argues that trial counsel's alleged failure to adequately impeach T.C.'s testimony about Weber's age, the date T.C. and Weber met, and the content of the Craigslist advertisement resulted in prejudice. First, any discrepancies as to Weber's age were irrelevant as this was not a case of misidentification. Second, as to the date of the occurrence, Weber contends that the "Fun" advertisement posted on August 10, 2016, would have expired forty-five days later, on September 24, 2016, and thus, could not have been the advertisement to which T.C. responded. Weber provides no evidence in support of his claim that the advertisement expired forty-five days after posting. Moreover, Weber testified at trial that advertisements could be left on Craigslist "indefinitely" and that he had "seen ads on there that had been put up for quite a long time." Further, T.C. testified that the contact occurred in September or November 2016 and Weber testified that he met T.C. on Labor Day weekend, 2016, which would have been well within the forty-five-day time limit, even if it applied. Finally, whether T.C. responded to an advertisement entitled "Fun," or one of Weber's other postings, was of minimal importance in light of the evidence presented. While there was conflicting testimony on when the contact occurred, the jury was in the best position to make a credibility determination and did so. The district court correctly concluded that Weber failed to establish how engaging in additional cross-examination on this topic would have created a reasonable probability of a different outcome.

Weber requests this Court to consider whether the alleged errors, when taken together, demonstrate prejudice. Weber's arguments can be generally categorized as trial counsel's failure to engage in additional cross-examination and impeachment of T.C. However, as noted above, additional impeachment of T.C. on the alleged errors, individually or collectively, does not demonstrate a reasonable probability of a different trial outcome, i.e., that Weber would not have been found guilty. Weber's own testimony confirmed much of T.C.'s testimony and the evidence of the text messages between them, wherein Weber does not deny the sexual contact, also corroborates T.C.'s testimony that Weber anally penetrated him. Weber's post hoc analysis of

8

how the case could be tried differently does not equate to ineffective assistance of counsel. Consequently, the district court correctly concluded that there was not a reasonable probability that additional impeachment of T.C. was likely to result in Weber's acquittal.

## IV.

## CONCLUSION

The district court did not err in concluding that Weber failed to establish a genuine issue of material fact regarding prejudice resulting from his claims of deficient performance. The district court's judgment summarily dismissing Weber's petition for post-conviction relief is affirmed.

Chief Judge GRATTON and Judge LORELLO, **CONCUR**.